# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP2119-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin,<br>     Plaintiff-Respondent,<br>  v.<br>Larry L. Jackson,<br>     Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 399 Wis. 2d 841, 967 N.W.2d 311
(2021 – unpublished)

| | |
|---|---|
| OPINION FILED: | January 20, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 30, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Jeffrey A. Wagner |

JUSTICES:
DALLET, J., delivered the majority opinion for a unanimous Court.

NOT PARTICIPATING:
ROGGENSACK, J., did not participate.

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Frederick A. Bechtold* and *Frederick A. Bechtold Attorney at Law, LLC,* Minnesota. There was an oral argument by *Frederick A. Bechtold.*

For the plaintiff-respondent, there was a brief filed by *Eric M. Muellenbach,* assistant attorney general, with whom on the brief was *Joshua L. Kaul,* attorney general. There was an oral argument by *Eric M. Muellenbach,* assistant attorney general.

An amicus curiae brief was filed by *Melinda A. Swartz* and the *Law Office of Melinda Swartz, LLC,* Milwaukee, on behalf of the Wisconsin Association of criminal Defense Lawyers.

**2023 WI 3**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP2119-CR
(L.C. No. 2015CF004698)

STATE OF WISCONSIN : IN SUPREME COURT

**State of Wisconsin,**

  **Plaintiff-Respondent,**

**FILED**

 **v.**

**JAN 20, 2023**

**Larry L. Jackson,**

Sheila T. Reiff
Clerk of Supreme Court

  **Defendant-Appellant-Petitioner.**

DALLET, J., delivered the majority opinion for a unanimous Court.

ROGGENSACK, J., did not participate.

REVIEW of a decision of the Court of Appeals. *Affirmed in part, reversed in part, and cause remanded.*

¶1 REBECCA FRANK DALLET, J. A defendant is entitled to a Machner[1] hearing if his postconviction motion sufficiently alleges ineffective assistance of counsel and the record fails

---

[1] State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). A Machner hearing is "[t]he evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain his or her handling of the case." State v. Balliette, 2011 WI 79, ¶31, 336 Wis. 2d 358, 805 N.W.2d 334.

to conclusively demonstrate that he is not entitled to relief. See State v. Ruffin, 2022 WI 34, ¶37, 401 Wis. 2d 619, 974 N.W.2d 432. Although one of Larry Jackson's three postconviction claims met both of these requirements, the circuit court[2] denied his motion without a hearing and the court of appeals affirmed. We affirm in part, reverse in part, and remand to the circuit court with instructions to hold a Machner hearing regarding that claim.

I

¶2 In 2015, Richard King was shot and killed in front of a duplex on North 60th Street in Milwaukee. Jackson was subsequently charged with first-degree intentional homicide and possession of a firearm by a felon.

¶3 King and his wife, C.W., lived in the duplex along with their upstairs neighbors Gerald Tucker and his wife, Tiffany. The two couples did not get along, and on the day of the homicide, King was upset with Gerald over some broken glass he found near his car. King and his friend Andre Dorsey confronted Gerald and Tiffany with a gun. The tension was momentarily defused, however, when the Tuckers' kids came outside. According to Gerald, after getting inside, Tiffany called their friend Jackson and asked him to come over. Later on, King confronted Gerald again after he stepped outside to smoke a cigarette. Dorsey, who was now standing off to the

---

[2] The Honorable Jeffrey A. Wagner of the Milwaukee County Circuit Court presided.

2

side, saw a man with a medium complexion who he later identified as Jackson walk up to Gerald.  The two whispered to each other and then entered the front of the duplex.  Moments later, Dorsey heard gunshots and saw King fall to the ground.  He then saw a hand with a light complexion pointing a gun through a crack in the doorway fire two shots in his direction.  After the shooting stopped, C.W. saw a young African American man with a dark complexion run past her ground floor window.  She was never able to positively identify him.

¶4  Gerald was arrested as a suspect in the homicide. While he was in custody, he told police that he did not know who shot King.  Months later, he identified Jackson as the shooter after learning that police had recovered the murder weapon. That weapon, a .40 caliber Smith and Wesson pistol, belonged to Jackson's friend, Joe Brown, and was matched by ballistics experts to a bullet and several casings found at the scene.  At trial, Brown testified that he loaned the gun to Jackson on the day of the shooting.  Jackson returned thirty to forty-five minutes later with rubber gloves and the gun, which had some bullets missing.  The two men boiled the gloves to destroy any evidence.  After changing his clothes, Jackson left.  The two men met up the next day and Jackson allegedly confessed to being involved in a shooting, although he did not mention King or the Tuckers by name.  Brown's friend, Anthony Boone, testified that he had once seen Jackson at Brown's house standing outside of the bathroom with what appeared to be a bag of clothes, but gave conflicting accounts as to when that occurred.

3

¶5   Jackson's defense at trial focused on his alleged alibi: that he was at his mother's house on the evening of the homicide.  The only defense witness was Jackson's mother, Carol.  She testified that she remembered the night well, and that she knew Jackson stayed at her house all night because her alarm system would have gone off if any of the doors to the house were opened.

¶6   The jury found Jackson guilty of both charges, and he filed a postconviction motion alleging ineffective assistance of counsel.  In it, Jackson contended that his trial counsel was ineffective for failing to contact two potential alibi witnesses or call them at trial.  Those two witnesses, Jackson's ex-girlfriend, JaNikka Marsh, and his sister, Crystal Jackson, submitted affidavits stating that they were with Jackson the evening of the homicide, that they were not contacted by trial counsel, and that they would have testified at trial if they were called to do so.  We discuss Marsh's and Crystal's specific factual claims in further detail below.  Jackson's postconviction motion also contended that trial counsel was ineffective in two additional respects: for failing to interview his mother or prepare her to speak to detectives or testify, and for incorrectly advising Jackson that the law required him to testify first.

¶7   The circuit court denied Jackson's postconviction motion without a hearing.  Regarding trial counsel's failure to contact Marsh or Crystal, the court discounted their proffered testimony due to their preexisting relationship with Jackson and

concluded that he had not sufficiently alleged deficient performance and that the record conclusively demonstrated that he was not prejudiced. See Strickland v. Washington, 466 U.S. 668, 687 (1984) (setting forth the two requirements for an ineffective assistance of counsel claim, deficient performance and prejudice). Additionally, the court held that Jackson's claim that counsel did not interview Carol or prepare her to speak to detectives or testify was conclusory, and that the record conclusively demonstrated Jackson was not entitled to relief on his claim that counsel incorrectly advised him that the law required him to testify first. The court of appeals affirmed. See generally State v. Jackson, 2020AP2119-CR, unpublished slip op., ¶¶23-29 (Wis. Ct. App. Oct. 12, 2021).

II

¶8 When we review a decision denying a postconviction motion without a Machner hearing, we evaluate two issues de novo. See Ruffin, 401 Wis. 2d 619, ¶¶27-28. First, we assess whether the motion on its face alleges sufficient material and non-conclusory facts that, if true, would entitle the defendant to relief. See id., ¶27. Second, we determine whether the record conclusively demonstrates that the defendant is not entitled to relief. See id., ¶28. If the defendant's motion alleges sufficient and non-conclusory facts which would entitle the defendant to relief and the record does not conclusively establish otherwise, then the circuit court must hold a Machner hearing. See id., ¶¶37-38; see also State v. Sholar, 2018 WI

5

53, ¶50, 381 Wis. 2d 560, 912 N.W.2d 89 (citing State v. Allen, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433). Conversely, "[i]f the motion does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." Ruffin, 401 Wis. 2d 619, ¶28 (citing Allen, 274 Wis. 2d 568, ¶9).

III

¶9  Jackson's postconviction motion alleges that his trial counsel was ineffective for: (1) failing to investigate or call alibi witnesses; (2) not interviewing Carol or preparing her to speak to detectives or testify; and (3) incorrectly advising him that the law required him to testify first.  Before analyzing whether Jackson is entitled to a Machner hearing on any of these claims, we review some general principles applicable to claims of ineffective assistance of counsel and Machner hearings.

A

¶10  A claim of ineffective assistance of counsel has two prongs: deficient performance and prejudice.  See Strickland, 466 U.S. at 687.  "To demonstrate deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness considering all the circumstances." State v. Dalton, 2018 WI 85, ¶34, 383 Wis. 2d 147, 914 N.W.2d 120.  In evaluating counsel's performance, we

6

are highly deferential to counsel's strategic decisions, but counsel nevertheless "has a duty to reasonably investigate or to make a reasonable decision that renders particular investigations unnecessary." Id., ¶¶34-35 (citing State v. Carter, 2010 WI 40, ¶23, 324 Wis. 2d 640, 782 N.W.2d 695). As for the prejudice prong, a defendant must show "a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." State v. Guerard, 2004 WI 85, ¶43, 273 Wis. 2d 250, 682 N.W.2d 12 (citing Strickland, 466 U.S. at 694). A "reasonable probability" in this context means "a probability sufficient to undermine confidence in the outcome." Id.

¶11 With these general principles in mind, to determine whether Jackson is entitled to a Machner hearing, we must decide two questions. First, does Jackson's motion allege sufficient material and non-conclusory facts that, if true, would entitle him to relief? See Ruffin, 401 Wis. 2d 619, ¶27. Because Jackson's motion alleges ineffective assistance of counsel, that means he must allege facts that, if true, would satisfy both the deficient performance and prejudice prongs of Strickland. See Sholar, 381 Wis. 2d 560, ¶50. If we answer that first question in Jackson's favor, we move on to the second and ask——regardless of the sufficiency of his allegations——whether the record conclusively establishes that Jackson is not entitled to relief. See id. In other words, does the record conclusively demonstrate either that Jackson's counsel's performance was not deficient or that he was not prejudiced? See id.; see also

7

Ruffin, 401 Wis. 2d 619, ¶47. Jackson is entitled to a <u>Machner</u> hearing only if we answer both of these questions in his favor.

B

¶12 We begin with Jackson's claim regarding two alibi witnesses, his then-girlfriend Marsh and his sister Crystal. According to Jackson's motion and the attached affidavits, he gave their names to his attorney but neither were contacted. Had they been contacted, both Marsh and Crystal stated they would have testified at trial that Jackson was at his mother's house at the time of the homicide.

¶13 Marsh's affidavit states that on the day of the homicide, Jackson got off work at 4:30 p.m. Jackson and Marsh picked up her children from daycare before 5:00 p.m. and got dinner. They arrived at Jackson's mother's home sometime after 5:00 p.m. After they arrived, Jackson took a shower while Marsh, who was not feeling well, laid down for a nap. After his shower, Jackson joined Marsh in bed. Marsh slept until 9:30 p.m. when Jackson woke up and the two scrambled to get Marsh to her job in time for the night shift.

¶14 Crystal's affidavit corroborates parts of this account and provides additional details. According to her affidavit, she was watching television at her mother's house on the evening of the murder. When Marsh and Jackson arrived, Marsh was not feeling well and she and Jackson went to his room so she could nap. According to Crystal, the couple stayed in the room until Jackson drove Marsh to work. Both Marsh's and Crystal's

affidavits place Jackson at his mother's home at the time King was killed.

¶15 We have little trouble concluding that, if these facts are true, Jackson's motion sufficiently alleges a claim of ineffective assistance of counsel. Indeed, the State does not dispute that counsel's failure to contact these witnesses or potentially call them at trial would constitute deficient performance. See also State v. Jenkins, 2014 WI 59, ¶41, 355 Wis. 2d 180, 848 N.W.2d 786 ("[I]n a swearing match between two sides, counsel's failure to call two useful, corroborating witnesses, despite [potential bias as a result of] the family relationship, constitutes deficient performance." (quoting Toliver v. Pollard, 688 F.3d 853, 862 (7th Cir. 2012)) (internal quotation marks omitted)). And Jackson's motion sufficiently alleges prejudice as well because it explains that counsel failed to investigate Marsh and Crystal at all, let alone call them at trial. See Allen, 274 Wis. 2d 568, ¶¶23-24 (explaining that a post-conviction motion contains sufficient facts when it alleges "the name of the witness (who), the reason the witness is important (why, how), and acts that can be proven (what, where, when)."); see also Washington v. Smith, 219 F.3d 620, 630-35 (7th Cir. 2000) (concluding that counsel's failure to contact or produce possible alibi witnesses at trial was constitutionally deficient performance and prejudicial).

¶16 Rather than focus on the sufficiency of Jackson's allegations, the State argues that the record conclusively establishes that Jackson was not prejudiced for two reasons.

9

First, according to the State, weaknesses in Marsh's and Crystal's proposed testimony and inconsistencies with Jackson's mother's testimony mean that "neither [witness] could have provided Jackson with an alibi." And second, "given the overwhelming evidence against Jackson, there is no reasonable probability that the result of the proceedings would have been different."

¶17 As to the weaknesses and inconsistencies in testimony, the State contends that because Marsh was asleep at the time of the homicide, "she lacked personal knowledge of where Jackson was at the time [King] was shot." The State also points out that Marsh's and Crystal's stories differ from Carol's testimony in two respects. First, Marsh says she laid down for a nap before 6:00 p.m., but Carol testified that she had a serious argument with Marsh around 6:30 p.m. Second, Crystal says that Marsh and Jackson stayed in their room the whole evening, whereas Carol testified that Jackson came in and out of the bedroom several times.

¶18 The problem with these arguments is that, in assessing whether a defendant is entitled to a Machner hearing, we must assume that the factual claims made in support of the motion are true. See State v. Love, 2005 WI 116, ¶37, n.15, 284 Wis. 2d 111, 700 N.W.2d 62. That Marsh was asleep at the precise time of the murder or that Crystal's account may have conflicted with Carol's trial testimony might be reasons for a jury to discount their testimony. But we cannot know, nor should we try to predict, how a jury might have weighed Marsh's

10

and Crystal's credibility. See id. at ¶42 ("The general rule is that credibility determinations are resolved by live testimony."). Moreover, had Marsh and Crystal been contacted by counsel, counsel might have made a different decision about which alibi witness or witnesses to call at trial. In any case, the jury would have had to determine what weight to give to their accounts and might ultimately have convicted Jackson anyway. But the failure of trial counsel even to contact Marsh and Crystal is enough to "undermine [our] confidence in the outcome." See Strickland, 466 U.S. at 694.

¶19 We also disagree with the State's assertion that the overwhelming evidence of Jackson's guilt conclusively establishes that he was not prejudiced. See Ruffin, 401 Wis. 2d 619, ¶40 (explaining that the record conclusively establishes that the defendant is not entitled to relief if it shows that there is "no reasonable probability that the outcome would have been different"). In fact, the State's case was not so overwhelming. The State's best evidence of Jackson's involvement came from witnesses with serious credibility issues. Gerald Tucker, the primary witness against Jackson, was arrested as a suspect in the homicide and had the clearest motive to kill King given their argument earlier that night. He told police on two occasions that he did not know the shooter and even claimed to have not seen the shooting. He changed his story and identified Jackson as the shooter after serving a six-month sentence on a revocation of probation, and only when he learned the police had found the murder weapon. This disclosure

11

resulted in a second probation revocation for obstructing the investigation. At trial, he testified that in exchange for his testimony, he hoped to reduce the 15-year sentence he was serving as a result of that revocation.

¶20 Joe Brown, who said that Jackson confessed to him after he returned Brown's gun, was a felon with three prior criminal convictions facing state and federal charges with a potential sentence of 15 years to life in prison for possessing the murder weapon. At trial, he acknowledged that he too hoped to minimize his time in prison by testifying against Jackson. And in exchange for cooperation in Jackson's case, the State ultimately dismissed the felon in possession of a firearm charge and federal prosecutors agreed to recommend a reduced sentence on his federal charge.

¶21 Andre Dorsey identified Jackson as the person who went into the house with Gerald, but he was standing 15 feet away at the time of the shooting and said that he saw only the shooter's hand. Moreover, he described the shooter's hand as having a light complexion but described Jackson as having a medium complexion. Dorsey was also a felon with three prior criminal convictions and on the evening of the homicide a gun was found in his car. Although he was arrested, he was not charged as a felon in possession of a firearm.

¶22 The only witnesses who were not potentially involved in the shooting and whose credibility was not undermined by prior convictions or other potential criminal exposure were C.W. and Anthony Boone. C.W. did not see the shooter. Instead, she

12

testified that she saw a man with a dark complexion run by the front window after the shooting, but she did not positively identify Jackson as that man when shown a photo array. And although Boone testified that he saw Jackson at Joe Brown's house, he gave conflicting accounts as to when that occurred. Given these weaknesses in the State's case, and the existence of multiple alibi witnesses that were not investigated by defense counsel, let alone called to testify at trial, the record fails to conclusively establish that Jackson is not entitled to relief.

¶23 In sum, Jackson's motion alleges sufficient material and non-conclusory facts that, if true, would entitle him to relief on this claim. Moreover, the record fails to conclusively show that Jackson is not entitled to relief. Had Marsh and Crystal been contacted by counsel, they may have testified, and the jury would have had to weigh their credibility, and perhaps that of Jackson's mother, against the State's witnesses, many of whom had credibility issues of their own. Given that, we cannot say the record conclusively demonstrates that there is no reasonable probability of a different outcome. As a result, the circuit court did not have discretion to deny Jackson a Machner hearing on this claim. See Ruffin, 401 Wis. 2d 619, ¶37.

C

¶24 Turning to Jackson's claim that counsel did not interview Carol or prepare her to speak to detectives or

13

testify, we conclude that Jackson is not entitled to a Machner hearing. That is because Jackson's motion is conclusory: it does not explain how counsel should have prepared her and what, if any, effect this might have had on her statements to detectives or her testimony. See Balliette, 336 Wis. 2d 358, ¶48 (explaining that a postconviction motion is conclusory if it "fail[s] to allege 'any factual assertions which would allow a court to meaningfully assess [the defendant's] claim.'" (quoting State v. Bentley, 201 Wis. 2d 303, 316, 548 N.W.2d 50 (1996))). Without that information, Jackson's motion fails to allege sufficient material and non-conclusory facts that, if true, would constitute ineffective assistance of counsel. See id.

¶25 Jackson is likewise not entitled to a Machner hearing on his claim that his counsel was ineffective when she told him the circuit court would require him to testify first. After the State rested, Jackson's counsel told the court that Jackson's mother and Jackson would testify, in that order. When the circuit court questioned the order of witnesses, counsel responded "I know the Court's aware of the logistical issues we have with him. Let me just talk to him about that, about if it would be okay if he testifies first." Jackson alleges that he then met with his counsel who told him "that the trial court was going to require him to testify before any of the other defense witnesses were called."

¶26 Jackson is not entitled to a Machner hearing on this claim because he has not sufficiently alleged that counsel's performance was deficient. See Balliette, 336 Wis. 2d 358,

14

¶63. Although Jackson's motion alleges what counsel said regarding the order of witnesses, it fails to demonstrate that counsel's statement "was incorrect, much less unreasonable." See Rodriguez v. United States, 286 F.3d 972, 984-85 (7th Cir. 2002) (rejecting allegations of deficient performance because the advice of counsel that led the defendant to decide not to testify was neither incorrect nor unreasonable); see also Strickland, 466 U.S. at 687 (in order to show deficient performance, a defendant must allege "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."). All that Jackson alleges his counsel told him was that the circuit court would require him to testify first. But Jackson does not explain how that statement was incorrect. Instead, Jackson asserts that the circuit court was required to allow him to testify in his preferred order under Brooks v. Tennessee, 406 U.S. 605 (1972), because "there were no circumstances in his case where having the other defense witnesses testify first would have impeded the orderly progress of the trial."

¶27 Counsel's statement was not unreasonable because the circuit court would not necessarily have violated Brooks by requiring Jackson to testify first. After all, Brooks held only that a statute requiring a defendant to testify first or not at all violated the defendant's constitutional rights. Id. at 612. And as numerous courts have concluded, Brooks does not restrict the wide latitude trial courts have in managing the presentation of evidence at trial on a case-by-case basis, including by

15

"determin[ing] generally the order in which parties will adduce proof." Geders v. United States, 425 U.S. 80, 86 (1976); see also United States v. Singh, 811 F.2d 758, 762-63 (2d Cir. 1987); United States v. Leon, 679 F.2d 534, 538 (5th Cir. 1982). Although Jackson alleges that allowing him to testify in his preferred order would not have resulted in delay or otherwise "impeded the orderly progress of the trial," those are not the only circumstances in which it is permissible for a trial court to require a defendant to testify first. See Singh, 811 F.2d at 762-63 (upholding an order requiring the defendant to testify first to lay foundation for subsequent testimony). Thus, even if everything alleged in Jackson's motion is true, it might still have been permissible for the circuit court to require him to testify first. And in that case, counsel's performance would not have been deficient since her statement would have been accurate, or at least not unreasonable. See Strickland, 466 U.S. at 687-88. Accordingly, the circuit court was correct to deny this part of Jackson's motion without a Machner hearing. Balliette, 336 Wis. 2d 358, ¶63.

IV

¶28 In sum, Jackson is not entitled to a Machner hearing on his claims that counsel was ineffective for failing to interview or prepare his mother to speak to detectives or testify and for incorrectly advising him that the law required him to testify first. But on his claim that counsel was ineffective for failing to investigate or call two alibi

16

witnesses, his motion alleges sufficient material and non-conclusory facts that, if true, would entitle him to relief, and the record fails to conclusively establish that he is not entitled to relief. Accordingly, we affirm in part and reverse in part the decision of the court of appeals and remand to the circuit court with instructions to grant Jackson a hearing on his alibi-witnesses claim.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶29 PATIENCE DRAKE ROGGENSACK, J., did not participate.