COURT OF APPEALS
DECISION
DATED AND FILED

December 13, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2053-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF495

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

RAYMOND M. MIKEAL, JR.,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Manitowoc County: MARK ROHRER, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Raymond M. Mikeal, Jr. appeals a judgment of conviction for aggravated battery with use of a dangerous weapon, battery to a law enforcement officer, resisting an officer causing substantial bodily harm to officer, resisting an officer, carrying a concealed knife, and four counts of felony bail jumping. He also appeals an order denying postconviction relief. On appeal, Mikeal argues the circuit court erred by denying him a *Machner*[1] hearing on his ineffective assistance of counsel allegations. We affirm.

## BACKGROUND

¶2 Police were dispatched to investigate a report by two citizens who discovered what they believed to be human bones in an abandoned trailer on a wooded lot. After arriving, police learned the trailer was not abandoned, it belonged to Mikeal, and it was on property owned by Mikeal. Police were unable to get in touch with Mikeal because he refused to speak to them by telephone. Police decided to obtain a search warrant and set up a perimeter around the property while they waited.

¶3 Police eventually saw Mikeal and his seventeen-year-old daughter, Claire,[2] heading toward their house. Mikeal ignored officers' orders to stop.

---

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). A *Machner* hearing is "[t]he evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain his or her handling of the case." *State v. Balliette*, 2011 WI 79, ¶31, 336 Wis. 2d 358, 805 N.W.2d 334.

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use a pseudonym when referring to Mikeal's minor daughter ("Claire") and the victim in this case ("Officer Adam").

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Mikeal entered the side door of his house. Officer Adam grabbed Claire's arm, pulled her away from the door, and directed her toward another officer. Mikeal saw this, came back outside, and lunged at Officer Adam. Officer Adam wrapped his arms around Mikeal in an effort to control him, pushed Mikeal backward, and the two landed in a pile of debris.

¶4 A chaotic melee ensued. Mikeal resisted the efforts of several officers to subdue him. In the melee, Mikeal bit Officer Adam in the bicep area and stabbed him with a knife in the back of both legs, causing serious injuries. The State charged Mikeal with thirteen offenses including attempted first-degree intentional homicide. A jury found Mikeal guilty of nine counts: aggravated battery while using a dangerous weapon (as to Officer Adam); battery to a law enforcement officer (as to Officer Adam); resisting an officer causing substantial bodily harm (as to Officer Adam.); resisting an officer (as to T.S.); felony bail jumping (four counts); and carrying a concealed knife.[3]

¶5 Mikeal filed a postconviction motion, alleging ineffective assistance of trial counsel. He argued trial counsel was ineffective for four reasons: (1) counsel failed to bring a spoliation motion on the ground that the State lost or destroyed police body camera footage; (2) counsel failed to object to certain hearsay testimony from law enforcement; (3) counsel failed to object to testimony regarding the report of bones found inside the trailer; and (4) counsel failed to interview and call Claire as a witness at trial.

---

[3] The jury found Mikeal not guilty of the remaining four counts: attempted first-degree intentional homicide (as to Officer Adam.); battery to a law enforcement officer (as to B.P.); resisting an officer (as to B.P.); and battery to a law enforcement officer (as to T.S.).

¶6     The circuit court held a partial evidentiary hearing.  At the outset of the hearing, the circuit court addressed Mikeal's spoliation assertion, observing spoliation required evidence to have first existed, nothing in Mikeal's motion established the existence of body camera footage, and the record established body camera footage of the melee never existed.  The court denied a hearing as to that allegation.

¶7     As for the allegations regarding counsel's failure to purportedly object to law enforcement testimony, Mikeal agreed with the court that his objections related to law enforcement testimony that two citizens reported finding human bones in a trailer, which was why law enforcement responded and began an investigation.  Mikeal also objected to law enforcement testimony regarding police attempts to contact him through his son-in-law.  The court concluded this testimony "has no bearing as far as the outcome of the trial whatsoever, it's purely why law enforcement was there."  The court emphasized that "ultimately the bones [were] found to be of animal in nature which clearly came out during the trial and was addressed by both parties."  The court denied a hearing as to those allegations, concluding counsel's failure to object to this evidence was not prejudicial because it would not have changed the outcome of trial.

¶8     As for Mikeal's allegation that counsel was ineffective for failing to interview and call Claire to testify at trial, the court stated it had reviewed Claire's affidavit but in its discretion, it would hear testimony from Claire about that allegation before deciding whether trial counsel would testify.

¶9     Claire testified that on the day of the incident, Mikeal told her to come home with him.  Mikeal appeared very confused and was sweating profusely and Claire followed him back to the house.  As Mikeal entered their house, Claire,

who was approximately three feet behind him, was grabbed from behind by an officer and pulled off the porch.

> My father turned around and yelled get your hands off of her, and I was kind of moved and pushed over to the side which is when I saw it was an officer that had grabbed me. Officer then grabbed my father, kind of lunged at him, I guess, and knocked him into the wall of the house, they fell into the scrap pile that was on the porch, they were on those steps at that point, and I was standing off to the side.
>
> And then at that point they were both on the ground in the scrap pile and numerous other officers kind of converged onto that scene and I remember there were probably at least four or five other officers kind of assisting in that. They were all scrambling on the ground.

Claire said she did not see Mikeal arm himself or stab anyone. Because there was a pile of individuals on the ground, Claire agreed she could not see every part of Mikeal and could not see what was in anyone's hands or what they were doing with their hands. Claire admitted that officers were yelling commands such as "Stop, show your hands, those types of things." Claire also testified that

> At one point I remember someone yelling tase him, tase him, which is when I kinda broke silence and yelled don't tase him and yelled at my dad kind of stop fighting, it's the police, it's me, calm down, which is when everything kind of stopped.

¶10    The court observed Claire's testimony was consistent with other trial testimony. The court emphasized that, at trial, Officer Adam testified he did not even know he was stabbed—he felt pain in the back of his leg, and no one actually saw Mikeal stab Officer Adam. The court continued:

> The fact that they were given commands and didn't follow the commands would be consistent with what came out during the trial, and the fact that a melee took place during the course of this event would not change it either.
>
> Furthermore, there was a statement made by the witness that the daughter, in essence, again, I don't know if this is

5

> necessarily a quote, but she told her father to, quote, yelled stop fighting. That additional information would actually hurt the defense from my standpoint, not help the defense.

The court concluded that the record did not establish there was a reasonable probability that the result of the trial would have been different had Claire testified. Because the record demonstrated Mikeal was not prejudiced, the court determined Mikeal's trial counsel did not need to testify and denied Mikeal's postconviction motion. He appeals.

## DISCUSSION

¶11    On appeal, Mikeal argues the circuit court erred by denying him a *Machner* hearing on his ineffective assistance of counsel allegations. "A claim of ineffective assistance of counsel has two prongs: deficient performance and prejudice." *State v. Jackson*, 2023 WI 3, ¶10, 405 Wis. 2d 458, 983 N.W.2d 608. "As for the prejudice prong, a defendant must show 'a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.'" *Id.* "A 'reasonable probability' in this context means 'a probability sufficient to undermine confidence in the outcome.'" *Id.*

¶12    "A defendant is entitled to a *Machner* hearing if his postconviction motion sufficiently alleges ineffective assistance of counsel and the record fails to conclusively demonstrate that he is not entitled to relief." *Jackson*, 405 Wis. 2d 458, ¶1 (footnote omitted). Stated another way, assuming a postconviction motion is sufficiently pled, a defendant is not entitled to a *Machner* hearing if the record conclusively demonstrates that either counsel's performance was *not* deficient or that the defendant was *not* prejudiced by any purported errors. *Id.*, ¶11.

¶13    We agree with the circuit court that the record conclusively demonstrates that Mikeal is not entitled to relief.  *See id.*  First, as to Mikeal's allegation that counsel was ineffective for failing to bring a spoliation motion on the ground that the State lost or destroyed body camera footage, nothing in the record establishes that body camera evidence of the melee existed.  Spoliation in the criminal context applies if the State either:  (1) failed to preserve evidence that is apparently exculpatory or (2) failed in bad faith to preserve evidence that is potentially exculpatory.  *State v. Greenwold*, 189 Wis. 2d 59, 67, 525 N.W.2d 294 (Ct. App. 1994).  A spoliation claim only applies to evidence in the State's possession.  A spoliation claim is inapplicable where the evidence police allegedly lost or destroyed never existed.  Thus, if Mikeal's trial counsel had pursued a spoliation argument, it would have been without merit.  *See State v. Allen*, 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245 ("It is well-established that trial counsel could not have been ineffective for failing to make meritless arguments.").

¶14    Mikeal next argues his trial counsel was ineffective for failing to object to hearsay testimony.  Specifically, at trial, an officer testified that two citizens reported that they went into a trailer and found what they believed were human bones.  The officer testified that, eventually, he spoke to Mikeal's son-in-law, who identified the trailer as belonging to Mikeal.  The officer testified that Mikeal's son-in-law advised him that Mikeal declined to speak to officers.  Officers then set up a perimeter to obtain a search warrant for the trailer.

¶15    We agree with the circuit court that the officer's testimony about the investigation was not hearsay because it was not offered for the truth of the matter asserted.  *See* WIS. STAT. § 908.01(3); *State v. Hines*, 173 Wis. 2d 850, 859, 496 N.W.2d 720 (Ct. App. 1993) (holding police report was not hearsay because it was offered to explain the actions of investigating officers and not to prove truthfulness

7

of informant's statements); *see also* ***Carter v. Douma***, 796 F.3d 726, 736 (7th Cir. 2015) ("When such a statement is offered only to show the effect it had on the police, it is used for a purpose other than the truth of its contents."). Here, the evidence was offered to explain why police were there, why they set up a perimeter and sought a search warrant, why they tried to contact Mikeal, and why they confronted Mikeal when he later appeared.

¶16    In any event, we also agree with the circuit court that Mikeal was not prejudiced by his trial counsel's failure to object to this testimony. *See* ***Jackson***, 405 Wis. 2d 458, ¶10. Mikeal offers no proof that the two citizen witnesses or Mikeal's son-in-law would have provided testimony different from what they told police. Importantly, the focus of the trial was not on the investigation but on what happened once police encountered Mikeal and the altercation ensued. The circuit court properly denied Mikeal's request for a ***Machner*** hearing on counsel's failure to object to this purported hearsay testimony. There is no reasonable probability that had these witnesses testified at trial the result of the jury trial would have been different. *See* ***id.***

¶17    Mikeal next asserts counsel was ineffective for failing to object to testimony regarding the bones found inside the trailer. At trial, the officer testified that the two individuals believed they found "baby bones" in the trailer. The officer readily explained that police later learned the bones were actually animal bones. Mikeal, however, contends "the suggestion that [he] had baby bones in his home" was prejudicial.

¶18    We disagree. Again, the evidence regarding the bones was offered to explain why police were there, why they set up a perimeter and sought a search warrant, why they tried to contact Mikeal, and why they confronted Mikeal when

he later appeared. At trial, both parties advised the jury that the bones ended up being animal bones. Mikeal was not prejudiced by counsel's failure to object to this testimony because there is no reasonable probability that the result of the jury trial would have been different. *See Jackson*, 405 Wis. 2d 458, ¶10. Again, the trial focused on what happened once police encountered Mikeal and the altercation that occurred. The circuit court properly denied Mikeal's request for a *Machner* hearing based on the bone testimony.

¶19 Mikeal next argues counsel was ineffective for failing to investigate or call Claire as a witness at trial. We conclude the record establishes that Mikeal was not prejudiced by counsel's failure to investigate or call Claire as a witness. *See Jackson*, 405 Wis. 2d 458, ¶10. Claire's testimony was consistent with that of the officers—she observed the melee that occurred between police and Mikeal, could not see everything, heard officers' commands to stop and show your hands, and observed Mikeal disregard the officers' commands. Her testimony would have confirmed that Mikeal failed to cooperate with officers. There is no reasonable probability that had Claire testified at trial the result of the jury trial would have been different. *See id.*

¶20 Finally, Mikeal argues the cumulative effect of counsel's errors prejudiced him. We disagree. Mikeal has not demonstrated any prejudice arising out of the errors he alleges. Accordingly, there is no prejudice to accumulate. "Zero plus zero equals zero." *State v. Brown*, 85 Wis. 2d 341, 353, 270 N.W.2d 87 (Ct. App. 1978) (citation omitted). The circuit court properly denied Mikeal a *Machner* hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.