COURT OF APPEALS
DECISION
DATED AND FILED

March 19, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1146-CR**

Cir. Ct. No. 2019CF2868

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DANIEL DWAYNE TIPTON,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER and DAVID L. BOROWSKI, Judges. *Affirmed*.

Before White, C.J., Geenen and Blanchard, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Daniel Dwayne Tipton appeals from the judgment of conviction, entered upon a jury's verdict, for attempted second-degree sexual assault of a child. He also appeals the order denying his motion for postconviction relief without a hearing. On appeal, Tipton argues that the trial court incorrectly instructed the jury. Upon review, we affirm.

## BACKGROUND

¶2 The State charged Tipton with attempted second-degree sexual assault of a child under sixteen years of age arising out of allegations that Tipton attempted to have sexual contact with his girlfriend's thirteen year old daughter, A.B., on June 28, 2019.[1]

¶3 At the jury trial in October 2019, A.B.'s mother, C.D., testified that she called 911 after A.B. told C.D. that Tipton "tried some stuff" with her. C.D. testified that Tipton was arrested by responding police. A.B. testified that she accompanied Tipton to the hospital because he was having chest pains. On the way home, he told her that "it looked like [she] liked to have sex and how he wanted to have sex." A.B. stated that Tipton told her that if she were sixteen or seventeen, "he would have sex with [her] if [she] wasn't a virgin." A.B. stated that he said "since [she was thirteen], he would just play with me," which she clarified meant touching her "area down there" that she uses to go to the bathroom.

---

[1] To protect the identity of the victim and her mother, we have substituted initials that do not correspond to their real names. *See* WIS. STAT. RULES 809.19(1)(g) and 809.86.

¶4 A.B. testified that when they returned home, Tipton came into A.B.'s room and told her not to tell anyone about the conversation they had. A.B. testified that Tipton sat next to her on her bed and "he tried to put his hands in my pants." She clarified that Tipton's fingertips were on the waistband inside her pants, but the rest of his hand was outside. However, when she moved away from him, he left the room.

¶5 A.B. further testified that Tipton returned and showed her porn on his cell phone, a video of a naked "male putting his penis into [a naked woman's] butt." She testified that Tipton asked her if she wanted to do that before her mother came home. She replied no, and he left the room. A.B. then testified that she left the house.

¶6 The State called the sensitive crimes detective who executed the search warrant of Tipton's cell phone. The investigation showed searches that Tipton made on his phone on the day of the alleged assault: in the early afternoon, searches related to chest pains and in the late afternoon, a search for "Big Booty Hoe's Taking Dick." His web browser history also showed his visit to Pornhub.com for the video found in the search. The detective also testified that she viewed the same video online—it depicted "an African American female who was face down, butt up, and an African American male who was behind her with an erect penis, and was inserting his penis into her." The detective explained how she took photographs of Tipton's cell phone showing the timestamped Google search history entries; the photographs were published to the jury.

¶7 Tipton testified in his own defense, denying any attempt to touch A.B. He testified that he told A.B. to "stop being fast" and listen to her mother. He stated that he told her to wait until she was sixteen or seventeen to have sex.

He denied showing A.B. the porn video, although he admitted he may have looked at porn at some point. He stated that he was afraid of A.B. because she would "snap" on him if he tried to enter her room without knocking.

¶8　The prosecutor, trial counsel, and the trial court discussed which jury instructions were needed and included the instructions for WIS JI—CRIMINAL 2105B, the charge of attempted second-degree sexual assault of a child: sexual contact or intercourse with a person who has not attained the age of sixteen years.[2] The jury was eventually instructed on this charge as follows:

> Attempted second-degree sexual assault of a child, as defined by the Criminal Code of Wisconsin, is committed by one who, with intent to have sexual contact with a person who has not attained the age of [sixteen], does acts towards the commission of that crime which demonstrate unequivocally, under all the circumstances, that he or she had formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.
>
> Before you may find the defendant guilty of … this offense, the [S]tate must prove by evidence which satisfies you beyond a reasonable doubt that the following three elements were present:
>
> 1. That the defendant intended to have sexual contact with the victim of the offense.
>
> 2. That the defendant believed that the person was under the age of [sixteen].
>
> 3. That the defendant did acts which demonstrate unequivocally, under all of the circumstances, that the defendant intended to and would have had sexual contact with the person except for the intervention of another person or some other extraneous factor.

---

[2] The Honorable Jeffrey A. Wagner presided over Tipton's trial and postconviction motion. We refer to Judge Wagner as the trial court. The Honorable David L. Borowski presided over Tipton's resentencing. We refer to Judge Borowski as the circuit court.

¶9     The jury returned a guilty verdict.  The trial court sentenced Tipton to nine years of initial confinement and six years of extended supervision.  Tipton moved for postconviction relief arguing that the wrong jury instruction had been given, that the term "sexual contact" was not defined in the instructions, and that trial counsel was ineffective for failing to object to the erroneous instructions.[3]  Further, he argued that he should be resentenced because the trial court did not explain its reasoning.  The trial court ordered resentencing, but denied the rest of his motion.  At resentencing, the case rotated to a new judicial branch and the circuit court imposed a term of seven and one-half years of initial confinement and seven and one-half years of extended supervision.  This appeal follows.

## DISCUSSION

¶10    On appeal, Tipton challenges the circuit court's denial of the remainder of his claims in his postconviction motion.  Tipton argues that he was denied his constitutional right to the effective assistance of counsel when trial counsel failed to object that the substantive jury instruction omitted the definition

---

[3] Tipton's postconviction motion also argued that the wrong jury instruction was given. The instruction given, WIS JI—CRIMINAL 2105B, refers to attempted second-degree sexual assault of a fictitious child.  He asserted that the correct instruction was WIS JI—CRIMINAL 2105A, which refers to attempted second-degree sexual assault of an actual child and requires the State to prove that the complaining witness was under the age of sixteen as an element of the charge.  The circuit court concluded that this was harmless error because A.B., C.D., and Tipton testified that A.B. was thirteen years old.  Tipton does not renew this argument on appeal.  "[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned." *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).  We address this argument no further.

of sexual contact.[4] Tipton asserts that he has alleged sufficient material facts to be entitled to a *Machner*[5] hearing on his claim.

¶11 We independently review two questions of law: (1) whether a defendant's postconviction motion "on its face alleges sufficient material and non-conclusory facts that, if true, would entitle the defendant to relief" and (2) "whether the record conclusively demonstrates that the defendant is not entitled to relief." *State v. Jackson*, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608. If the motion supports relief based on those two questions, then the defendant is entitled to an evidentiary hearing. *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. If not, "then either option—holding a hearing or not—is within the circuit court's discretion." *State v. Ruffin*, 2022 WI 34, ¶28, 401 Wis. 2d 619, 974 N.W.2d 432. "We review a circuit court's discretionary decisions under the deferential erroneous exercise of discretion standard." *Allen*, 274 Wis. 2d 568, ¶9.

¶12 To succeed on his ineffectiveness claim, Tipton's motion for postconviction relief must allege sufficient material facts to satisfy the familiar two-prong test for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 687 (1984): deficient performance and prejudice to the defense from that performance. "To demonstrate deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness considering all the circumstances." *State v. Dalton*, 2018 WI 85,

---

[4] Although the State argues that any errors in the jury instructions were harmless, we will address this issue under Tipton's claim of ineffective assistance of counsel. *See State v. Carprue*, 2004 WI 111, ¶47, 274 Wis. 2d 656, 683 N.W.2d 31.

[5] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶34, 383 Wis. 2d 147, 914 N.W.2d 120.  To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  "We need not address both components of the inquiry if the defendant makes an insufficient showing on one."  *Dalton*, 383 Wis. 2d 147, ¶32.

¶13    If "sexual contact" had been defined in accordance with the statutes and the jury instructions for sexual assault of a child offenses involving sexual contact, it would have been drafted as appropriate to the facts of the case, as described in WIS JI—CRIMINAL 2101A.  Sexual contact, under these facts, means "intentional touching … for the purpose of … sexually arousing or gratifying the defendant[.]"  WIS. STAT. § 948.01(5) (2021-22).[6]  A defendant may use "any body part or object" to intentionally touch "complainant's intimate parts." Sec. 948.01(5)(a)1.  "'Intimate parts' means the breast, buttock, anus, groin, scrotum, penis, vagina or pubic mound of a human being."  WIS. STAT. § 939.22(19).

¶14    We assume without deciding that trial counsel's performance was deficient for failing to object to the jury instructions, which did not define "sexual

---

[6]  Sexual contact in WIS. STAT. ch. 948 has multiple meanings for intentional acts "for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant," including intentional touching of intimate body parts by a body part or object and the intentional use of ejaculate, urine, or feces for these purposes.  WIS. STAT. § 948.01(5).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

contact." "A proper jury instruction is a crucial component of the fact-finding process." ***State v. Perkins***, 2001 WI 46, ¶40, 243 Wis. 2d 141, 626 N.W.2d 762.

¶15 Turning to the prejudice inquiry, we consider "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." ***Strickland***, 466 U.S. at 695. To make this determination, this court considers the totality of the evidence before the jury. ***Id.*** We conclude that if the jury had been properly instructed on the definition of sexual contact, the jury would not have had reasonable doubt about Tipton's guilt. First, Tipton's defense was that A.B. was not truthful, not that the attempted contact was innocent. Second, A.B.'s credibility was solidified by the corroborating evidence on Tipton's cell phone. Third, the evidence against Tipton was overwhelming.

¶16 First, the failure to define "sexual contact" did not negatively affect Tipton's defense. In the attempt charge, the State sought to prove that Tipton was trying to intentionally touch an intimate body part of A.B. Tipton never alleged that he was trying to touch some part of A.B.'s body that would not qualify as an "intimate part" or that he was not acting for his own sexual gratification. Instead, Tipton testified that nothing sexual happened at all, that A.B. was lying possibly to prevent her mother from finding about certain activities with Tipton's nephew, and that he entered her room only to tell her to get dressed. However, Tipton fails to show how defining "sexual contact" in the jury instructions would have affected his defense.

¶17 Second, the jury's credibility findings would not have been affected by the definition of sexual contact. The State argues that the evidence before the jury presented only two options to consider: that A.B. was credible, with her

testimony bolstered by the evidence from Tipton's phone, or that Tipton was credible and A.B. was lying. The jury's verdict showed that the jurors found A.B. credible. The record reflects that A.B. testified that Tipton showed her the porn video around 4 p.m. At trial, she reviewed the police photographs of Tipton's cell phone and identified the video from the thumbnail to the link and noted the time in the search as 4:42 p.m. In contrast, the jury had a reasonable basis to find Tipton's testimony to be incredible. When asked how A.B. identified the porn video that police found on his web browser history on his phone at the time she stated, Tipton's answer was unresponsive to the specific question, stating that "You acting like she ain't never looked up porn before." We conclude that nothing about the sexual contact definition would have discredited A.B. or bolstered Tipton's credibility.

¶18  Third, the evidence against Tipton was overwhelming. The record reflects that A.B.'s testimony was unambiguous and consistent—there was no confusion in her mind that Tipton's comments and actions meant that he wanted to have sexual contact with her. A.B. testified that Tipton talked about having sex with her when she was sixteen or seventeen, he told her he would only "play with her" because she was so young, and then told her not to tell anyone about his comments. A.B. testified that Tipton showed her a porn video and asked her if she wanted to do that. A.B. described Tipton touching her waistband while sitting on her bed, an action showing his attempt to touch her in an intimate part until she moved away. Other evidence solidified her credibility. It was not contested that A.B. left the house after feeling uncomfortable with Tipton, she told her mother about the incident as soon as she could, and she told the police the same information. Her testimony about the timeline was substantiated by the evidence

on Tipton's cell phone, which showed his search for medical information in the early afternoon and his search and viewing of the porn video in the late afternoon.

¶19    Based upon our examination of the record, we conclude there was not a "reasonable probability" that the jury would have reasonable doubt about Tipton's guilt if it had been properly instructed about the meaning of sexual contact. *See* **Strickland**, 466 U.S. at 694.  Therefore, we conclude that Tipton has failed to show prejudice from trial counsel failing to object to the missing definition in the jury instructions. **Id.** at 695.

¶20    Without a showing of prejudice, Tipton's claim for ineffective assistance of counsel fails.  *See* **Dalton**, 383 Wis. 2d 147, ¶¶32, 52.  Because the record conclusively demonstrates that Tipton is not entitled to relief, the circuit court had discretion to deny his motion without a hearing.  **Ruffin**, 401 Wis. 2d 619, ¶48.

## CONCLUSION

¶21    We conclude that Tipton's claim of ineffective assistance of counsel fails because he has not made a showing of prejudice from trial counsel's failure to object that the definition of sexual contact was not included in the jury instructions.  We conclude the trial court's decision to deny Tipton's motion for postconviction relief without a hearing was within its discretion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

10