COURT OF APPEALS
DECISION
DATED AND FILED

July 3, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP77-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF122

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CHAD M. POTRYKUS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County: BRAD D. SCHIMEL and LLOYD V. CARTER, Judges. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Chad M. Potrykus appeals from a judgment of conviction for burglary and an order that denied his postconviction motion for resentencing without an evidentiary hearing.[1]  Potrykus argues that he is entitled to resentencing because:  (1) the sentencing court relied on inaccurate information at sentencing; and (2) his trial counsel was ineffective by failing to object to the inaccurate information during the sentencing hearing.  For the reasons set forth in this opinion, we reject Potrykus' arguments and summarily affirm.

¶2     The parties do not dispute the basic facts pertinent to this appeal. Potrykus pled no contest to burglary.  The circuit court withheld sentence and placed Potrykus on probation.   The Department of Corrections (DOC) later revoked Potrykus' probation for his involvement in criminal activities in Douglas County on January 6, 2021.  The revocation packet prepared by the DOC also included information from a sheriff's investigator related to a search on October 9, 2020 at an apartment where Potrykus' personal identifying information was found. On sentencing after revocation, the court imposed five years of initial confinement and three years of extended supervision.

¶3     Potrykus moved for resentencing on the grounds that the sentencing court relied on inaccurate information and that his trial counsel was ineffective for not objecting when the court referred to the inaccurate information before imposing sentence.   On review, the postconviction court summarily denied resentencing without an evidentiary hearing.  It held that the sentencing court did not rely on inaccurate information and, for that reason, Potrykus would be unable

---

[1] The Hon. Brad D. Schimel presided over Potrykus' original sentencing hearing and sentencing after revocation.  The Hon. Lloyd V. Carter presided over the postconviction hearing on the motion for resentencing.

to prove ineffective assistance of counsel at an evidentiary hearing. Potrykus appeals.

¶4 Potrykus argues that there were two pieces of inaccurate information that the sentencing court considered in violation of his constitutional right to due process: (1) that he possessed a gun on October 9, 2020; and (2) that he was involved in drug trafficking on October 9, 2020. Potrykus further argues that his trial counsel was ineffective for not pointing out the inaccurate information to the sentencing court and for not discovering an informant's statement in a sheriff investigator's report indicating that Potrykus was not involved in drug trafficking out of the apartment.[2] Potrykus asserts that he is entitled to an evidentiary hearing on the ineffective assistance of counsel claim. The State responds that the sentencing court did not rely on inaccurate information and, therefore, trial counsel was not ineffective for failing to object to the information at the sentencing after revocation hearing.

¶5 "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. Whether the defendant was denied that right is a constitutional question that we review de novo. *Id.*

---

[2] In briefing, Potrykus asserts that the sentencing court held him responsible for violating a condition of probation that was not verbally stated on the record but was included in the written judgment of conviction—namely, that he not associate with known drug users or drug traffickers. However, the transcript of the sentencing after revocation hearing does not support a conclusion that the sentencing court imposed a harsher sentence based on a violation of this, or any, condition in particular. The DOC revoked Potrykus' probation for his possession of a firearm and methamphetamine on January 6, 2021. This was the information on which the court relied. The record is clear that the danger to the community based on Potrykus' continued involvement with firearms and drugs drove his sentence after revocation, not the fact that he violated a particular probation condition set by the court.

3

¶6 A defendant seeking resentencing "must show by clear and convincing evidence that: (1) some information at the original sentencing was inaccurate, and (2) the circuit court actually relied on the inaccurate information at sentencing." *State v. Coffee*, 2020 WI 1, ¶38, 389 Wis. 2d 627, 937 N.W.2d 579. If "the defendant shows actual reliance on inaccurate information, the burden then shifts to the State to prove the error was harmless." *State v. Travis*, 2013 WI 38, ¶23, 347 Wis. 2d 142, 832 N.W.2d 491. "A reviewing court must independently review the record of the sentencing hearing to determine the existence of any actual reliance on inaccurate information." *Id.*, ¶48. "We review the circuit court's articulation of its basis for sentencing in the context of the entire sentencing transcript[.]" *State v. Alexander*, 2015 WI 6, ¶25, 360 Wis. 2d 292, 858 N.W.2d 662.

¶7 As did the postconviction court, we begin by turning to the record on the sentencing court's remarks. The court properly addressed the three required sentencing objectives: the seriousness of the offense (explaining that the underlying burglary offense "was serious because an AR15 rifle was stolen and because of your actions was put into illegal circulation"); Potrykus' character (noting his extensive criminal history and that the court had granted probation because Potrykus "had some successes" in the past, but, with Potrykus' pending charges related to being pulled over "now we are dealing with guns and drugs again"); and the need to protect the public (observing that the burglary for which Potrykus was being sentenced after revocation "was one that there was a significant danger to the community and need to protect the community from you").

¶8 The sentencing court also addressed Potrykus' rehabilitation need. It concluded, based on Potrykus' numerous failed attempts at probation throughout

his criminal career, that it had "no choice but to have that rehabilitation need be addressed in a confined setting."

¶9 After reciting Potrykus' lengthy criminal record and history of repeated failure on supervision, the sentencing court discussed the January 6, 2021 incident. It stated:

> On January 6th of this year when you're pulled over in that vehicle, you say you don't know anything about the things in the vehicle. Another person in the car says otherwise. It's often familiar because now we are dealing with guns and drugs again. Best case scenario you're hanging around with known drug users again.

¶10 The court was aware that charges arising out of that incident were pending in Douglas County at that time.[3] Potrykus does not challenge the accuracy of anything in connection with the January 6 incident.

¶11 The sentencing court then discussed the October 9, 2020 search of the apartment in Superior where Potrykus was staying. It is information related to this search that Potrykus argues was inaccurately presented to the court. Related to this incident, the court accurately noted that Potrykus was "in places where drug trafficking was going on." However, the court acknowledged, as defense counsel had earlier pointed out, that Potrykus was not charged with any offense in connection with that residence. The court observed, again accurately, that the search produced "all sorts of things. And again, a gun involved." It was only at this point where the court misstated that Potrykus' personal identifiers were found

---

[3] Eighteen days after he was sentenced after revocation in this case, Potrykus pled no contest to, and was convicted in Douglas County Circuit Court of, possession of a firearm by a convicted felon as a repeat offender and possession of methamphetamine, both in connection with the January 6, 2021 incident.

5

inside a drawer that also contained a gun. Defense counsel did not object or correct the court. As he did at the postconviction hearing, Potrykus argues on appeal that this misstatement by the court and counsel's failure to object entitle him to resentencing or, in the alternative, an evidentiary hearing on counsel's alleged ineffectiveness.

¶12 Although the sentencing court did misstate that Potrykus' identifiers were found in a drawer with the gun, that misstatement was not far off the mark. The sheriff investigator's report, which was included in the revocation packet, revealed that Potrykus' personal identifiers were found in a kitchen drawer that also contained a baggie of marijuana. No gun was found in that drawer, but a detective "located a silver handgun magazine inside of a kitchen drawer" (presumably not the drawer with Potrykus' identifiers) during the search. There was also evidence that Potrykus lived in the home, and at least two of the homes' residents were charged with drug trafficking, meaning that Potrykus had associated with drug traffickers while he was on probation. The court was therefore not mistaken in observing that Potrykus had affiliated with drug traffickers during this time period. Thus, the only inaccuracy in the sentencing court's statements was that the handgun magazine was actually found in another kitchen drawer, rather than in the drawer with a baggie of marijuana and Potrykus' personal identifiers.

¶13 In imposing a sentence, "[t]he [circuit] court considers a variety of factors because it has a responsibility 'to acquire full knowledge of the character and behavior pattern of the convicted defendant before imposing sentence.'" ***State v. Salas Gayton***, 2016 WI 58, ¶23, 370 Wis. 2d 264, 882 N.W.2d 459 (citation omitted). "The sentencing court … must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular

defendant, given the crime committed." *Id.* (citation omitted). Therefore, the scope of the information a court may consider includes "not only 'uncharged and unproven offenses' but also facts related to offenses for which the defendant has been acquitted." *Id.* (citations omitted). Such was the case here. There is no indication that either the investigator's report or the revocation packet indicated that Potrykus himself was involved in drug trafficking or keeping firearms at the residence. It indicated that other residents of the home were so involved, and it was not unreasonable for the sentencing court to infer that Potrykus associated with those people, particularly because the report indicated that several personal identifiers of Potrykus' were found in the home.

¶14    In sum, there is no indication that the information provided to the sentencing court contained inaccuracies. Potrykus' sentence was based entirely on accurate information—relative to both the October 9, 2020 search results and Potrykus' crimes on January 6, 2021—showing that he continued to associate with drug users and traffickers, he possessed and used drugs, and drove a car on January 6, 2021 with a loaded firearm and methamphetamine in the trunk. The sentence was not based on a finding that Potrykus either possessed a firearm or engaged in drug trafficking in October 2020. Further, Potrykus has not shown that the court's misstatement that Potrykus' identifiers were found in a kitchen drawer with a gun had any bearing on the sentence.

¶15    Simply put, there is no evidence that the sentencing court either received or relied on inaccurate information when imposing sentence. We therefore conclude that Potrykus fails to satisfy his burden to show by clear and convincing evidence that inaccurate information was presented to the court at sentencing and that the court relied upon this information. *Coffee*, 389 Wis. 2d 627, ¶38. Accordingly, Potrykus' constitutional right to due process was not

violated. *Tiepelman*, 291 Wis. 2d 179, ¶9. He is not entitled to resentencing, and his postconviction claim fails.

¶16 Potrykus also argues that his trial counsel was ineffective by failing to object to the allegedly inaccurate information provided at sentencing. He asserts that he was prejudiced by his counsel's deficient performance because there is a reasonable probability that the court would have imposed a lesser sentence absent the inaccurate information. *See Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984) (claim of ineffective assistance of counsel must show that counsel's performance was deficient and prejudiced the defendant, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). This court need not address both prongs if the defendant fails to make a showing on one of them. *See id.* at 697.

¶17 As an initial matter, contrary to Potrykus' assertions, we observe that trial counsel did point out inaccuracies in the revocation packet related to the October 2020 incident. Counsel explained as follows:

> There is a lengthy part of the revocation packet that references an incident from October 9th of 2020 in which drugs, money and a gun were found in my client's residence … It wasn't his residence. He was roommates with two other individuals. I think it should be noted that no criminal charges were filed as a result of that incident.

¶18 As stated above, the sentencing court made a point to repeat counsel's statement that Potrykus was not charged with any offenses related to the October 2020 incident. Nonetheless, Potrykus argues that he was prejudiced by counsel's failure to correct the court in its statements that a gun, rather than

marijuana, was found in a drawer with Potrykus' identifiers and that Potrykus associated with drug traffickers.

¶19    Here, the prejudice inquiry is intertwined with the inaccurate sentencing claim. *See Alexander*, 360 Wis. 2d 292, ¶¶38-39.  As we concluded above, Potrykus has not established that inaccurate information was presented at sentencing, nor was there evidence that the sentencing court relied on inaccurate information.  We conclude that Potrykus has failed to make a showing of prejudice because he cannot show the resulting sentence would likely have been different. Without a showing of prejudice, we need not address whether trial counsel's performance was deficient. *See id.*, ¶39.  Potrykus' ineffectiveness claim fails.

¶20    Finally, we conclude that the postconviction court acted within its discretion to deny Potrykus' postconviction motion without an evidentiary hearing. *See State v. Ruffin*, 2022 WI 34, ¶28, 401 Wis. 2d 619, 974 N.W.2d 432. The record conclusively demonstrates that Potrykus was not entitled to postconviction relief. *See State v. Jackson*, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2021-22).