COURT OF APPEALS
DECISION
DATED AND FILED

February 13, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1390-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2016CF2395**

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

MATTHEW CURTIS SILLS,

      DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DAVID L. BOROWSKI, Judge. *Affirmed*.

Before White, C.J., Geenen and Gill, JJ.

¶1 WHITE, C.J. Matthew Curtis Sills appeals from the judgment of conviction, entered upon a jury's verdict, for one count of first-degree child sexual assault–sexual intercourse with a child under the age of thirteen. He also appeals the order denying postconviction relief without a hearing. Sills argues that the

trial court's objective bias denied him of his constitutional right to a fair trial and that his attorney provided ineffective assistance of counsel. We reject both arguments and affirm.

## BACKGROUND

¶2      In June 2016, Sills was charged with first-degree sexual assault of a child–sexual contact with a child under the age of thirteen, contrary to WIS. STAT. § 948.02(1)(e) (2021-22),[1] based on his seven-year-old daughter, Elizabeth, reporting that Sills sexually assaulted her between November or December 2015 through May 2016.[2] After negotiation with the State, Sills entered a guilty plea in February 2017 to an amended charge of second-degree sexual assault–sexual contact of a child under the age of sixteen, contrary to § 948.02(2). In May 2017, Sills moved to withdraw his plea, and after an evidentiary hearing, the circuit court found that Sills had not presented a fair and just reason for plea withdrawal and denied his motion.[3] The circuit court sentenced Sills to fifteen years of imprisonment, bifurcated into nine years of initial confinement and six years of extended supervision.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] We have adopted the pseudonym Elizabeth to protect the victim's identity. *See* WIS. STAT. RULE 809.86 (2021-22).

[3] The Honorable Jeffrey A. Wagner presided over Sills's initial case, conducted the plea colloquy, denied his motion for plea withdrawal, and sentenced him. We refer to Judge Wagner as the circuit court.

¶3 Sills appealed and in January 2020, this court concluded that Sills presented a prima facie case of a ***Bangert***[4] violation in the plea colloquy and allowed him to withdraw his plea. *See **State v. Sills***, No. 2018AP1053-CR, unpublished slip op. (WI App Jan. 14, 2020). Sills returned to trial posture and the State amended the information to charge him with first-degree child sexual assault–sexual intercourse with a child under thirteen, contrary to WIS. STAT. § 948.02(1)(e).

¶4 The State filed a motion to introduce two matters of other acts evidence: (1) that in October 2012, Elizabeth's mother reported to Monroe County Department of Human Services that Sills had sexually abused Elizabeth on two prior occasions when they lived in Tomah when she was about three or four years old ("the Tomah allegations"); and (2) that in 2016, during the investigation of the crime underlying this case, a Milwaukee County District Attorney's Office investigator recovered the internet history on Sills's Xbox 360, which showed searches that included "Father daughter taboo sex porn tube movies" and visits to pornographic websites.

¶5 The case proceeded to a jury trial in February 2021. The trial court, addressing the parties prior to the beginning of trial, referred to the our decision allowing Sills to withdraw his plea as a "tortured and … incorrect interpretation of

---

[4] ***State v. Bangert***, 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986) ("Whenever the [WIS. STAT. §] 971.08 procedure is not undertaken or whenever the court-mandated duties are not fulfilled at the plea hearing, the defendant may move to withdraw his plea."). Sills alleged that the circuit court "misinformed Sills of the potential punishment he faced if convicted— information that the trial court was required to give him." ***State v. Sills***, 2018AP1053-CR, unpublished slip op. ¶38 (WI App Jan. 14, 2020). The court failed to inform him that there was a risk of a fine of up to $100,000. ***Id.***, ¶5. As we stated in our prior decision, "the State did not present any evidence and it does not argue on appeal that the record shows that Sills had knowledge of the fine." ***Id.***, ¶38

this entire matter[.]"[5]   The trial court stated "neither side should be discussing, obviously, the fact that the defendant entered a guilty plea; that he then filed an appeal; [or] that [the circuit court] was reversed[.]  The trial court continued, "the logic or … illogic of the [c]ourt of [a]ppeals," was not relevant or important.

¶6      Before the trial began, the trial court denied the State's motion to admit other acts evidence of the Tomah allegations.  The State, arguing for its inclusion, asserted that because of the time between the charges in 2016 and the trial in 2021, Elizabeth might have a hard time differentiating these allegations and the Tomah allegations.  She was three or four years old at the time of the Tomah allegations, she was seven during the alleged crime on trial, and she was now just past her twelfth birthday.  Trial counsel opposed the motion and pointed out that Elizabeth's mother brought the allegations to the authorities, but Elizabeth never made a statement that she was actually sexually assaulted and the claim was deemed unsubstantiated.  The trial court ruled that the Tomah allegations "should … stay out generally," the "State should try to keep it out," but the court recognized that a "very, very young child [was] taking the stand, a child that's just turned [twelve] a couple of weeks ago."  However, the trial court further concluded that "[i]f something comes out, it depends how [it] comes out.  It depends on what's said.  It depends on what the jury hears…. [I]t may be nothing or it may be something."

¶7      During voir dire, the State explained to the potential jurors that DNA and other scientific evidence is often not available in sexual assault cases, and that

---

[5] The Honorable David L. Borowski presided over Sills's trial after the case was remanded by this court, sentencing, and denial of postconviction relief after the trial.  We refer to Judge Borowski as the trial court.

it plays less of a role in real-life prosecutions than it does in television crime dramas. After multiple prospective jurors raised their hands when the State asked if anyone "needs DNA evidence" from the State to convict, the court addressed the prospective jurors stating that "in terms of the evidence, you need to all be able to accept and analyze whatever evidence is presented," and not "speculate or wish" that the State had presented DNA, fingerprint, or other scientific evidence. The court continued that the jury would have to analyze the case "according to rules" given by the court.

¶8      The trial began with the State calling the forensic interviewer with Children's Wisconsin at the Milwaukee Child Advocacy Center who interviewed Elizabeth in 2016. The jury was shown segments of Elizabeth's recorded interview. The State called J.R., Elizabeth's mother, who testified about taking Elizabeth to the hospital to investigate her concerns about Sills sexually abusing Elizabeth.

¶9      The State called Elizabeth, who testified that around age seven, she had to move away from her father after telling her mother and the police about "gross stuff" her father did to her. She explained that the "gross stuff" was "sex." She stated that she told the truth when she told the police about the assaults. When asked about a time her father had sex with her, Elizabeth responded, "I kind of think it all started maybe when I was around three or four." The State redirected her to ask if she remembered a time her father had sex with her in Cudahy (where she lived at the time of the assault in the criminal complaint). Elizabeth said "no" and when asked the last time she remembered any sex between her father and her, she said she was "[m]aybe four[.]"

¶10    Elizabeth was asked about what happened with her father; she testified that while she sat on his lap, he showed her "gross" sexual videos and touched her vaginal area. She felt his finger go inside her. He "ended up sticking his pee thing inside of [her] butt." She stated they played the "horsy game" in her parents' bedroom, during which she was "on top of the thing, the gross thing and … I would go up and down." She clarified that the "gross thing" was Sills's penis.

¶11    Elizabeth testified that Sills told her not to tell her mother. When her mom was working, Sills would watch Elizabeth, and he made her touch his penis. Elizabeth testified that Sills showed her a video of "a guy going up into this one room and then a cop going in and then when the guy got out he had like blood all over him and bruises and stuff, and he said that this is the reason why you shouldn't tell."

¶12    During cross-examination, Elizabeth testified that she remembered the place she lived with her mother and father in Cudahy and that her father had sex with her there.

¶13    The State called a Milwaukee County District Attorney's (DA) office investigator, who testified about a recorded jail call that Sills made to his sister, and then later played portions of the call for the jury. In the call, Sills refers to Elizabeth, her mother, and his sister by name. Sills stated that he was "concerned that his wee-wee might become exposed" when he was wearing boxer shorts and Elizabeth had on a short, pink miniskirt and he was putting lotion on his hands. Sills stated in the call that "at some point his finger may have made contact" with Elizabeth when she got onto his lap, at "which point he pushed her off on to the bed" and shouted obscenities at her. Sills stated words to the effect of

"you stupid, fucking bitch, telling all those fucking lies. I should beat your fucking ass." In the call, Sills blamed Elizabeth for the criminal case.

¶14    Sills testified in his own defense. He denied sexually assaulting Elizabeth in any way. He acknowledged that when he watched Elizabeth, they would play "horsy," during which he crawled on the floor and she'd hop on his back and say "giddy-up." He denied that there was sexual contact. When asked about the jail phone call, he stated that he "was kind of over-exaggerating a little bit on the phone call" to explain to his sister why Elizabeth was confused in her accusation.

¶15    Trial counsel asked Sills if he remembered an event or time when Elizabeth misunderstood what was happening and thought Sills was "sexually assaulting her or penetrating her?" Although initially he denied it, Sills then responded, "[a] long time ago when she was three, though. Do you want me to explain what happened?" Trial counsel said "[n]o" and moved on. During cross-examination after a sidebar, the State returned to the topic and asked Sills if there was an allegation and investigation into whether Sills had assaulted Elizabeth when she was three years old. Sills agreed. With the jury out of the courtroom, the trial court memorialized the sidebar, stating its finding that that Sills had "opened the door" to the Tomah allegations and the State was allowed to cross-examine him. Ultimately, the jury returned a guilty verdict.

¶16    At the sentencing hearing, Elizabeth's mother, with Elizabeth present, read a note from Elizabeth expressing that she was sad that she did not have a dad. The mother explained that "ever since the retrial," Elizabeth had "been having episodes of inappropriate behavior and self-destructive behavior," for which the mother was working with a psychiatrist, counselor, and her school.

She stated that Sills "has been abusive physically, mentally and sexually hurting his daughter."

¶17 The State reviewed the details of the case, plea, and trial, and then let the court know that in addition to the jail phone call, the DA's office investigator recovered letters Sills sent to his mother in which he stated that he would "sign his rights off to [Elizabeth]. He just doesn't want to go to prison." Further, he stated that "this is not about [Elizabeth], it's about me[.]" Sills instructed his mother to talk to Elizabeth and tell her "to tell the truth, just like in Tomah" and that "if [Elizabeth] says she lied, then I can sue the cops and we can get a thousand dollars a day." The State described the letters as "incredibly manipulative." The court questioned the State about the letters and asked if Sills telling his mother to talk to Elizabeth and "tell her to say she lied" would mean that "he knows [Elizabeth is] telling the truth[.]" The State responded, "Correct."

¶18 Trial counsel addressed the court and argued that Sills has cognitive disabilities exacerbated by use of drugs and a family history of incest abuse. He explained that Sills wanted to withdraw his plea because he was not guilty and that he did not come up with the plea withdrawal strategy that prevailed at the court of appeals. Trial counsel stated to the trial court "if you agree or disagree with the [c]ourt of [a]ppeals[] decision … that's not something that should specifically be taken out on" Sills. Trial counsel stated, "Your Honor saw him on the stand. I think his cognitive limitations were apparent and evident. He testified terribly." He referenced that the trial court had decided not to allow in the other acts evidence "until Mr. Sills got up on the stand and opened the door to all of that."

¶19 Sills also addressed the court, stating, "I am sorry that the court had to hear sick things that I did not do. I am not guilty." He stated that he believed

Elizabeth would tell the truth after she was eighteen, continuing that "[m]y life ended when my own kid, my own child that I was raising said a bunch of sick lies about me, about her own father."

¶20     The trial court then began its sentencing remarks, beginning with the procedural history noting that "what the [c]ourt of [a]ppeals ruled[] has nothing to do directly with my sentence[.]"  The court commented that Sills got "a second trial on what I would consider an absolute and total technicality."  The court stated it had "significant respect" for the court of appeals, but it found its "decision to be preposterous."  The court stated that it gave the procedural background because the case was in a different position than it was during Sills's plea to the circuit court.  It considered that when the circuit court sentenced Sills to fifteen years of imprisonment, "that was for the defendant who had pled guilty, who had accepted responsibility, who had said I did commit a sexual assault of my own daughter," and by "pleading guilty avoided having a trial, not for his sake but for the victim's sake."  The court then noted that it was sentencing Sills about five years later and that "none of that now is true."

¶21     The trial court stated that the underlying facts of what Sills did to his own daughter were "sick, disgusting and vile."  The court considered that instead of acting as a parent and protecting his daughter, Sills victimized her.  The court stated that Sills's explanations "during the trial were not believable, so you've aggravated the circumstances you were in a few years ago with [the circuit court] in every way you can."  The court determined that while the underlying facts and gravity of the offense remained the same, "every other thing I need to look at is not the same."  The court acknowledged that Sills had his right to trial restored by the court of appeals decision, but concluded Sills was "a serious danger to the community."  The court concluded that Sills's choice to contest his daughter's

allegations instead of taking responsibility affected the court's assessment of Sills's character.

¶22 The trial court dismissed the idea that Elizabeth was lying and noted that she was traumatized by the abuse as well as the trial. The court stated that Sills's behavior was "sick and twisted," that "of a pedophile … who needs to go to prison for a long time." The court was "not impressed" with Sills calling his daughter "a stupid, fucking bitch" and threatening to "beat her ass," evidence that came out only as the result of the trial. The court said that the need to protect the victim and "other children of any sort" required a lengthy prison sentence.

¶23 In determining the sentence, the trial court said that it was "tempt[ed]" to follow the State's recommendation of thirty to thirty-five years of initial confinement given that Sills "presented to the court with very, very few, if any, redeeming qualities[.]" The court observed that "Mr. Sills, you did all that to your own daughter, and you sit here as nonplus[sed] and unfazed as anybody I've ever seen sit here. You are a bad actor. You are what prisons are designed for to protect the rest of society from people like you." In discussing its sentencing considerations on the record, the court took into account Sills's need for rehabilitation, the need to protect the public, the gravity of the offense, dangerousness, and the totality of the circumstances. The trial court sentenced Sills to thirty years of imprisonment, bifurcated as twenty years of initial confinement and ten years of extended supervision.

¶24 Sills filed a postconviction motion for a new trial, arguing that the trial court's "frequently expressed frustration with the [c]ourt of [a]ppeals 'preposterous' ruling permitting the defendant to exercise his right to a trial constituted objective bias." He further asserted that trial counsel provided

ineffective assistance of counsel in its handling of the Tomah allegations and for not seeking the court's recusal. The trial court rejected both arguments and denied Sills's motion without a hearing.

¶25 Sills now appeals.

## DISCUSSION

¶26 Sills renews his postconviction arguments on appeal. First, he argues that the trial court's objective bias denied his constitutional right to a fair trial.[6] He also argues that the record reflects actual bias in three respects: the court's comments during voir dire, the court's handling of the Tomah allegations, and the court's discretion at sentencing. Second, he asserts that trial counsel's deficient performance denied him of his constitutional right to the effective assistance of counsel. For the reasons discussed below, we reject both arguments.

### I.     *Judicial bias*

¶27 A basic requirement of due process is a fair trial before a fair judge. ***Caperton v. A.T. Massey Coal Co. Inc.***, 556 U.S. 868, 876 (2009). "There is a presumption that a judge acted fairly, impartially, and without prejudice." ***State v. Herrmann***, 2015 WI 84, ¶3, 364 Wis. 2d 336, 867 N.W.2d 772. "A defendant

---

[6] Although the State argues that Sills forfeited his judicial bias claim by failing to raise it during the trial, we decline to apply the forfeiture rule. The forfeiture rule is a principle of judicial administration. ***State v. Huebner***, 2000 WI 59, ¶11, 235 Wis. 2d 486, 611 N.W.2d 727. "The purpose of the 'forfeiture' rule is to enable the circuit court to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal." ***State v. Ndina***, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612. Here, Sills argued that judicial bias impaired his right to a fair trial in his postconviction motion before the trial court. The trial court addressed and rejected Sills's argument. Therefore, there is no issue of blindsiding the trial court or the State. As both parties have briefed the issue before the trial and appellate court, we address his claim on the merits. *See id.*, ¶38.

may rebut the presumption by showing that the appearance of bias reveals a great risk of actual bias." *Id.* We independently review the question of law of whether a judge was objectively not impartial. *State v. Pirtle*, 2011 WI App 89, ¶34, 334 Wis. 2d 211, 799 N.W.2d 492.

¶28     Sills asserts that the trial court's frustration with the court of appeals decision allowing him to withdraw his plea constituted objective bias, as shown by trial court commenting on the decision multiple times. The record reflects that prior to the beginning of the trial, the court referred to the court of appeals decision as a "tortured and … incorrect interpretation of this entire matter." Second, the trial court asked whether the State could have charged him with a count that had a mandatory minimum sentence—it could have, but the case was not prosecuted in that way. Third, when the State moved to allow in Elizabeth's forensic interview, which was unopposed by the defense, the trial court commented that "the only reason we're here four years later is because of the defendant's actions and because of the [c]ourt of [a]ppeals or it would have been automatically allowed" if Elizabeth were under twelve years old.[7] Finally, Sills asserts that the court unfairly blamed him for the four-year delay, arguing that the delay was largely due to congestion at the trial and appellate courts and not his choices.

---

[7] WISCONSIN STAT. § 908.08 governs the admission "into evidence the audiovisual recording of an oral statement of a child who is available to testify[.]" In assessing such an admission, the trial court considers whether the "the trial … in which the recording is offered will commence" "[b]efore the child's 12th birthday"; or "[b]efore the child's 16th birthday and the interests of justice warrant its admission" under factors set forth in subsection (4). *Id.* Here, Elizabeth had just turned twelve; therefore, the court's considerations were greater than just her age.

¶29     The State contends that Sills misconstrues the record, arguing that the trial court clearly acknowledged that Sills had the right to appeal and that it was not holding its disagreement with the court of appeals against Sills. The State asserts that the trial court's statement: that "the only reason we're here four years later is because of the defendant's actions and because of the [c]ourt of [a]ppeals" was not expressing bias, but explaining that the statutory standard changes when the trial is held after the victim is twelve years old. The State also argues it is pure speculation that the trial court's question about whether Sills was charged with a count with a mandatory minimum sentence showed bias. Instead, the State posits it was a reflection of the court's desire to understand the prosecutor's charging decision under a complex statutory scheme.

¶30     Sills argues that the trial court showed additional instances of objective bias during the sentencing hearing, where the trial court stated that "what the [c]ourt of [a]ppeals ruled[] has nothing to do directly with my sentence." Sills asserts the word "directly" undermines confidence in the court's objectivity. The court also stated that Sills's second trial was based on "an absolute and total technicality" that "effectively" gave him a "second kick at the cat[.]" The trial court, criticizing the court of appeals decision, dismissed whether the circuit court "glossed" over the possibility of a fine, concluded "who cares," noted that it could not "think of any homicide or sexual assault in my career that I imposed a fine on," and doubted if the circuit court ever had imposed such a fine. The trial court noted that there were fewer appeals after a guilty plea than "an appeal after a trial which makes sense obviously," which Sills argues means that the court's statement implied that his appeal did not make sense.

¶31     The State again contends that Sills misconstrues the trial court's sentencing remarks. The record reflects that the court stated that the "appellate

13

process … itself has nothing to do with my sentence." In its postconviction decision, the court stated, "The court meant what it said: the fact that the defendant pursued an appeal and won, and exercised his right to a jury trial afterward, did not have any impact on the court's sentence." (Emphasis omitted.) The court relied on *State v. Fuerst*, 181 Wis. 2d 903, 915, 512 N.W.2d 243 (Ct. App. 1994), which concluded that a trial court has "the opportunity at the postconviction hearing to clarify its statements" on sentencing rationale, and that the appellate court can infer meaning from those remarks. Here, the trial court repeatedly stated that it was not holding against Sills its dissatisfaction with the court of appeals decision. Further, we interpret the court's comment that there are obviously more appeals after cases that go to trial to express the court's understanding of the appellate process, as opposed to an attack on Sills's right to seek plea withdrawal and appeal.

¶32     The State further argues that even if the trial court's criticism of the court of appeals decision could be tied to Sills as the beneficiary of the reversal, negative remarks "do not automatically equal bias[.]" *Pirtle*, 334 Wis. 2d 211, ¶34. Quoting the United States Supreme Court, the *Pirtle* court noted "that expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women … sometimes display" do not establish bias or partiality. *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555-556 (1994). While we agree that the court's comments were negative and the trial court's opinion of the court of appeals decision showed dissatisfaction and

anger, under the totality of the circumstances, the court's statements do not demonstrate objective judicial bias.[8]

¶33     While objective judicial bias does not require proof of actual bias, an objective bias claim is stronger if actual bias can be shown. *See **Herrmann***, 364 Wis. 2d 336, ¶46. Sills contends that there were three instances of actual bias against him:  the trial court's comments on DNA evidence during voir dire, the trial court's handling of the other acts evidence of the Tomah allegations, and the sentence the court imposed. The State argues that these instances do not constitute actual bias, but were wholly appropriate and driven by the circumstances and the court's stated reasons.

¶34     First, Sills argues that the trial court created a risk of prejudice by affirming the State's questions on the necessity of DNA evidence to convict. Sills contends that the trial court's comments were unnecessary and that the State was making the same point. The State argues that the court's comments were appropriate in the context of the prospective jurors' responses. We conclude that the court's statement did not constitute objective or actual bias because it merely stated the law.

¶35     Second, Sills argues that the trial court exhibited actual bias in its method of excluding the other acts evidence of the Tomah allegations prior to trial. Sills contends that it was no surprise that the Tomah allegations seeped in to the trial when the trial court ruled that it may allow testimony about the allegations in

---

[8] We note that this court does not condone the trial court's repeated negative commentary on Sills's previous appeal that restored his trial right. Under the totality of the circumstances, the court conducted a fair trial. Although the court kept its comments from the jury, the court's vocal opinions were unnecessary and resulted in this examination for bias.

"depend[ing] on what's said" and "what the jury hears." In its postconviction decision, the court considered its ruling to be rooted in the practical realities of the prosecution of sexual assault against very young children, relying on *State v. Fawcett*, 145 Wis. 2d 244, 254, 426 N.W.2d 91 (Ct. App. 1988) ("The vagaries of a child's memory more properly go to the credibility of the witness and the weight of the testimony[.]"). Our examination of the record shows that the trial court's admonishment against the Tomah allegations being introduced as other acts evidence indicated its position against the State introducing the evidence. However, the court left open the possibility of the information being admitted depending on the circumstances, with an awareness of Elizabeth's age and the effect of time on her memory. The record reflects that the State did not pursue questioning Elizabeth about the Tomah allegations. In contrast, Sills himself opened the door. We conclude that the trial court's handling of Elizabeth's testimony about the Tomah allegations did not constitute actual bias.[9]

¶36 Third, Sills argues that the trial court's sentencing showed actual bias because the court's frustration with the court of appeals decision was an impermissible factor affecting sentencing. When imposing a sentence, the legislature has prescribed that the court "shall consider all of the following:" (1) "The protection of the public"; (2) "The gravity of the offense"; (3) "The rehabilitative needs of the defendant"; and (4) "Any applicable mitigating factors and any applicable aggravating factors, including" those specified in that statute.

---

[9] The State argues that Sills has failed to develop an argument that the trial court's decision to admit this evidence was an erroneous exercise of discretion. *See State v. Hurley*, 2015 WI 35, ¶28, 361 Wis. 2d 529, 861 N.W.2d 174. While we agree that Sills's argument was not grounded on evidentiary admission standards, we address his claim as presented as an instance of actual bias, not trial court error.

WIS. STAT. § 973.017(2). Our "review is limited to determining if discretion was erroneously exercised." *State v. Gallion*, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. "When discretion is exercised on the basis of clearly irrelevant or improper factors, there is an erroneous exercise of discretion." *Id.*

¶37 Sills asserts that the trial court's frustration with the court of appeals was an improper factor. He contends that the court's pervasive complaints that the appellate decision was preposterous or illogical undermines confidence that Sills was sentenced fairly. He argues that the court unfairly blamed Sills for the delay in the second trial, and asserts that the imposed sentence after trial was twice as long as the plea sentence, which showed evidence of actual bias.

¶38 The State argues that that the trial court imposed the sentence with the proper factors in mind and that the additional time imposed reflected the information about Sills's crimes that were brought before the court in the trial. The record reflects that the trial court properly considered the *Gallion* factors when it imposed the sentence. The court considered the significant need to protect the public, due to Sills's "vile" behavior and that he was a "serious danger" to the community. The trial court considered the gravity of the offense, noting that it was the same as originally charged, but that Sills's unbelievable testimony "aggravated the circumstances" of the case "in every way" compared to the posture of the case before the circuit court. Further, the trial court considered Sills's needs for rehabilitation, which it determined could only be met through an extended prison term. We do not interpret the court's statements as disparaging Sills's restored right to trial. Rather, the statements reflect that Sills chose not to accept responsibility and to contest his daughter's allegations, which affected the court's assessment of Sills's character.

17

¶39 We conclude that the trial court did not use its frustration with the court of appeals decision as an improper factor when it imposed the sentence. The record reflects ample evidence supporting the court's discretion in its sentencing decision. Moreover, the sentence was within the maximum allowed by statute. It was not "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." ***Ocanas v. State***, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975). We conclude that the sentence did not constitute actual bias.

¶40 Finally, Sills contends that the alleged instances of bias should be considered in aggregate as evidence of the appearance of bias. "When the appearance of bias reveals a great risk of actual bias, the presumption of impartiality is rebutted, and a due process violation occurs." ***Herrmann***, 364 Wis. 2d 336, ¶46. When we consider the instances of objective or actual bias alleged by Sills in the aggregate, we conclude that Sills has not overcome the presumption that the trial court was fair and impartial. ***Id.***, ¶3. Our examination of the record shows that the trial court separated its unhappiness with the court of appeals from the case against Sills. Whether viewed individually or cumulatively, the court's comments do not create an appearance of animosity toward Sills, much less an actual bias against him. We conclude that Sills's longer sentence after trial was not imposed improperly.

## II.  *Ineffective assistance of counsel*

¶41   The trial court denied Sills's postconviction claim of ineffective assistance of counsel without a ***Machner***[10] hearing.  "Whether a defendant's postconviction motion alleges sufficient facts to entitle the defendant to a hearing for the relief requested is a mixed standard of review."  ***State v. Allen***, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.  We begin by independently reviewing two questions of law.  ***State v. Jackson***, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608.  First, we review "whether the motion on its face alleges sufficient material and non-conclusory facts that, if true, would entitle the defendant to relief."  ***Id.***  "Second, we determine whether the record conclusively demonstrates that the defendant is not entitled to relief."  ***Id.***  If the motion supports relief based on those two questions, then "the circuit court must hold an evidentiary hearing."  ***Allen***, 274 Wis. 2d 568, ¶9.  However, "if the record conclusively demonstrates that the defendant is not entitled to relief, then either option—holding a hearing or not—is within the circuit court's discretion."  ***State v. Ruffin***, 2022 WI 34, ¶28, 401 Wis. 2d 619, 974 N.W.2d 432.  "We review a circuit court's discretionary decisions under the deferential erroneous exercise of discretion standard."  ***Allen***, 274 Wis. 2d 568, ¶9.

¶42   Thus, to prevail on his claim, Sills must allege sufficient material facts to show ineffective assistance of counsel, as described in the two-prong test in ***Strickland v. Washington***, 466 U.S. 668 (1984).  The defendant must show

---

[10] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).  This court established that "it is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel" in an evidentiary hearing, known as a ***Machner*** hearing, which allows a reviewing court to "determine whether trial counsel's actions were the result of incompetence or deliberate trial strategies."  ***Id.***, at 804.

both that counsel's performance was deficient and that the defendant was prejudiced by counsel's performance. *Id.* at 687. "Counsel's conduct is constitutionally deficient if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. To prove that counsel's deficient performance prejudiced his defense, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In our analysis, we "may reverse the order of the two tests or avoid the deficient performance analysis altogether if the defendant has failed to show prejudice" from counsel's performance. *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

¶43 Sills argues that trial counsel's performance was deficient in two ways: (1) how it handled the references to the Tomah allegations both by Elizabeth and by Sills; and (2) in failing to move for recusal by the trial court. He contends that trial counsel's deficient performance prejudiced his defense, and therefore, he was denied his constitutional right to the effective assistance of counsel. From our examination of Sills's postconviction motion, we conclude his allegations are largely conclusory. A postconviction motion must allege "who, what, where, when, why, and how" the defendant's claim is entitled to relief. *Allen*, 274 Wis. 2d 568, ¶23. Sills's allegations do not satisfy this standard. However, even if we were to accept that trial counsel's performance was deficient, Sills has failed to make a showing that trial counsel's performance prejudiced his defense. *See Johnson*, 153 Wis. 2d at 128.

¶44 For Sills's first claim of ineffectiveness, he argues that trial counsel was ineffective for failing to insist on a "firmer ruling" prior to trial on the

20

admission of the other acts evidence of the Tomah allegations. He argues that trial counsel should have objected when Elizabeth testified that the assault began when she was three or four years old, and should have sought a curative jury instruction on Elizabeth's testimony.[11] Sills contends that trial counsel was deficient for asking him what might explain Elizabeth's testimony, which led to Sills volunteering to discuss what happened when Elizabeth was three, which opened the door to the Tomah allegations and cross-examination by the State.

¶45 Although Sills argues that but for trial counsel's performance failing to limit testimony about the Tomah allegations, it was unlikely that a unanimous jury would have convicted him, he fails to show there was a reasonable probability of a different outcome. *See **Strickland***, 466 U.S. at 694. Sills ignores that the jury was shown Elizabeth's recorded forensic interview which was thorough in describing Sills's abuse. Moreover, the record reflects that the video was far more detailed than Elizabeth's testimony about the Tomah allegations. Sills also ignores that his own testimony opened the door to the State questioning him about the Tomah allegations. Sills additionally ignores the impact of the recorded jail call in which he blamed his daughter for these events. We conclude that Sills has failed to make a showing of prejudice on his first claim.

¶46 For Sills's second claim of ineffectiveness, he contends that trial counsel was ineffective for failing to move the trial court to recuse itself after the trial court's remarks prior to the trial commencing, or at least before the sentencing hearing. He argues that the trial court's vocal frustration with the court

---

[11] In its postconviction decision, the trial court stated that it would have denied an objection to Elizabeth's testimony about her father assaulting her at age three or four. We do not consider the court's postconviction decision dispositive to the issue.

21

of appeals put Sills's right to a fair trial at risk and trial counsel should have moved to counteract that.

¶47 Sills's recusal claim offers only conclusory and speculative allegations. As we discussed above, Sills fails to show that the trial court exhibited objective or actual bias. Sills's argument that counsel should have moved for recusal before sentencing is similarly speculative. The sentence that the trial court imposed was grounded in the facts evinced at trial, formed with the factors required by WIS. STAT. § 973.017(2), and well within the maximum sentences allowed by law. We conclude that Sills has failed to make a showing of prejudice from trial counsel's performance on his second claim.

¶48 Because we conclude that Sills has failed to satisfy the prejudice prong in his postconviction claims, his claim for ineffective assistance of counsel fails. *See Johnson*, 153 Wis. 2d at 128. Accordingly, the trial court acted within its discretion when it denied his postconviction motion without a hearing. *See Ruffin*, 401 Wis. 2d 619, ¶28.

## CONCLUSION

¶49 For the reasons stated above, we conclude that Sills has failed to show judicial bias or ineffective assistance of counsel. Therefore, we affirm the judgment of conviction and the order denying his motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.