COURT OF APPEALS
DECISION
DATED AND FILED

August 22, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1375-CR**

Cir. Ct. No. 2016CF1834

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LATU I. HAMPTON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Reversed and cause remanded with directions.*

Before Kloppenburg, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Latu Hampton appeals a judgment of conviction and an order denying, without an evidentiary hearing, Hampton's postconviction motion for plea withdrawal based on ineffective assistance of counsel.  Hampton contends that his trial counsel, who has since passed away, was ineffective by failing to pursue a motion to suppress Hampton's inculpatory statements to police during an in-custody interrogation.  Specifically, Hampton contends that:  (1) the police did not provide Hampton with adequate *Miranda* warnings before questioning him;[1] (2) Hampton did not validly waive his *Miranda* rights; and (3) Hampton's statements were involuntary.  We ordered supplemental briefing for the parties to specifically address an additional argument at least peripherally raised and addressed in the circuit court and suggested by Hampton's initial briefing on appeal: that Hampton's trial counsel should have moved to suppress because, during the interrogation, Hampton invoked his right to remain silent and, thereby, to "cut off questioning" by the police.  *See State v. Markwardt*, 2007 WI App 242, ¶24, 306 Wis. 2d 420, 742 N.W.2d 546 (addressing a defendant's right to remain silent in order to "cut off questioning" by police).

¶2     For the reasons explained in this opinion, we conclude that Hampton invoked his right to remain silent during his interrogation and therefore a motion to suppress on that basis would have been successful.  Accordingly, we reverse and remand for a *Machner* hearing.[2]  At the hearing, the parties should address whether Hampton was prejudiced, that is, whether Hampton would not have pled guilty had his counsel pursued a successful motion to suppress Hampton's inculpatory statements to police.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

*Background*

¶3     Hampton was arrested following a shooting at a park in Madison. Police conducted an interrogation of Hampton, who was seventeen years old at the time, at the jail where Hampton was being held in custody. During the interrogation, Hampton made inculpatory statements. The State then charged Hampton with multiple criminal offenses based on the shooting. Hampton pled guilty to first-degree reckless injury and the remaining counts were dismissed and read in at sentencing.

¶4     After sentencing, Hampton moved to withdraw his plea based on ineffective assistance of counsel. He alleged that his trial counsel performed deficiently by failing to move to suppress his in-custody statements to police. Specifically, he argued that his statements were made without a valid waiver of his *Miranda* rights and also that his confession was involuntary, in part because, during the interview, he twice asked to return to his pod at the jail and the police failed to honor his requests. He further alleged that, had his counsel pursued a motion to suppress, the motion would have been granted and Hampton would not have entered a guilty plea.

¶5     The videotape recording and transcript of Hampton's interrogation set forth the following facts relevant to Hampton's postconviction motion. A detective and a uniformed police officer questioned Hampton about the shooting in a small interview room at the jail, where Hampton was being held in custody. At the beginning of the interrogation, the detective read Hampton his *Miranda* rights, and Hampton said he would talk to the detective and police officer. However, after about fifteen minutes of questioning—during which Hampton answered some questions and sought some information from the detective and police officer as

well—Hampton questioned why no one else involved was in trouble. The detective explained that they were still gathering information, but that multiple people would be arrested in connection with the shooting. The police officer added, "You're facing the most serious charge, but there are a lot of other people coming in behind you."

¶6 At that point, Hampton looked down with his hand on his head, paused for a moment, and then said quietly, "Alright. Well, can I go back to my pod now?" The detective responded, "Um, if you want. Otherwise … there's some other clarifying questions that I had but if … you don't want to talk anymore." Hampton asked, "What do you mean clarifying questions, like?" The detective asked, "Do you want to continue to talk while we just go through those?" Hampton responded, "Like you got more questions for me?" The detective said, "Well, like some stuff about … on the map and stuff like that, we didn't get a chance to point that out, I was just—" at which point Hampton looked down at the map on the table in front of him with his hand on his head and shook his head "no," and the detective interrupted himself to ask, "You don't want to do that?" Hampton, still looking down with his hand on his head and shaking his head "no," mumbled, "I just want to go back to my pod." The detective responded, "Okay. That's fine."

¶7 Rather than end the interrogation and return Hampton to his pod, the police officer and detective made several statements about the differences between an accidental shooting and an attempted homicide. The police officer said, "You realize that that's a big deal though … what he's trying to tell you when it goes from accidental to attempted, that's like years." Hampton responded, "Yeah." The police officer continued: "I mean, and that's what he's trying to get from you because no one can tell us what you were thinking other than you. And so but attempted homicide is a whole lot more years." The detective then said: "There are people

that have done 20 years on attempted homicide. I know people that didn't even do a day in jail on shooting somebody by accident." The police officer continued:

> So that's a huge deal and that's what he's trying to get to you right now. Because no matter how many people we talk to, it could be 50, 60, we talked to 50-plus people, but no one can tell us what you were thinking. We need to know what you were thinking. And that is a big deal when it comes to charging decisions. They haven't wrote those up yet.

At that point, Hampton asked, "So when is the next time that you come see me?" The detective answered, "I guess I wasn't really planning on it ever again." After continued interrogation, Hampton made incriminating statements.

¶8 The circuit court denied the motion for plea withdrawal without an evidentiary hearing. The court found that a suppression motion would have been denied, and that Hampton therefore failed to show prejudice. The court explained that, based on its review of the videotape of the in-custody interrogation, it determined that Hampton validly waived his *Miranda* rights and that his confession was voluntary.

¶9 The circuit court explained its reasoning that Hampton did not make a "true request" to end the interrogation, as follows:

> Mr. Hampton contends he asked to go back to his pod and that he was essentially prevented from doing so. Thus, so the argument goes, he didn't intentionally relinquish his right to counsel and he didn't voluntarily continue speaking to the officer. Viewing the tape, I disagree. Mr. Hampton asked -- well, when he asked whether he can return to his pod, it was in a tone which suggested he was musing about the possibility.
>
> He didn't defiantly say he wanted to return to his pod, stand up and attempt to leave. Rather, he requests to return in an almost nonchalant manner and makes no effort to leave. The detective, in response to Mr. Hampton's query about returning to his pod says, "If you want, I have some

5

clarifying questions." When informed that the detective didn't intend to return some other time to speak with Mr. Hampton, Mr. Hampton asks if it was an accident, what would the charges be. Mr. Hampton then says he doesn't want to just say it was self-defense because that's what the police were suggesting.

Although I can't read Mr. Hampton's mind, what appears to be happening is he's trying to figure out how best to state what happened. His request to return to the pod was not a true request. And even if it was, it was only momentary and he quickly changed his mind and decided to stay. At no time did the officers prevent him from leaving or actively dissuade him from leaving.

¶10 Hampton appeals his judgment of conviction and the order denying his postconviction motion for plea withdrawal based on ineffective assistance of counsel without an evidentiary hearing.

*Standard of Review*

¶11 A defendant is entitled to an evidentiary hearing on a postconviction motion if the motion alleges "sufficient material and non-conclusory facts that, if true, would entitle [the defendant] to relief," and the record does not "conclusively establish[] that [the defendant] is not entitled to relief." *State v. Jackson*, 2023 WI 3, ¶11, 405 Wis. 2d 458, 983 N.W.2d 608. We independently review whether a defendant's postconviction motion alleges sufficient facts to entitle the defendant to a hearing. *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

¶12 A post-sentencing motion for plea withdrawal must establish that plea withdrawal is necessary to correct a manifest injustice. *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). "[T]he 'manifest injustice' test is met if the defendant was denied the effective assistance of counsel." *Id.* A defendant claiming ineffective assistance of counsel must show that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must point to specific acts or omissions by counsel that were "outside the wide range of professionally competent assistance." *Id.* at 690. To prove prejudice in the plea withdrawal context, the defendant must demonstrate that, absent counsel's errors, the defendant would not have pled guilty but would have exercised the defendant's constitutional right to a trial. *State v. Dillard*, 2014 WI 123, ¶¶85, 95-96, 358 Wis. 2d 543, 859 N.W.2d 44.

¶13 In assessing whether counsel was ineffective by failing to pursue a suppression motion, we independently apply the constitutional principles to the facts that the defendant claims would have required suppression of evidence. *See Markwardt*, 306 Wis. 2d 420, ¶30 (appellate courts "independently review the trial court's application of constitutional principles to" the facts).

*Discussion*

¶14 "Both the United States and Wisconsin Constitutions protect persons from state compelled self-incrimination." *State v. Hall*, 207 Wis. 2d 54, 67, 557 N.W.2d 778 (1997); *see also* U.S. CONST. amend. V; WIS. CONST. art. I, § 8(1). A defendant who has waived *Miranda* rights still has the "right to cut off questioning" during a custodial interrogation. *Markwardt*, 306 Wis. 2d 420, ¶24. "'Through the exercise of a suspect's option to terminate questioning [the suspect] can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation.'" *Id.* (citation omitted). "[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends on whether [the person's] right to cut off questioning was scrupulously honored." *Id.*

¶15 A defendant must "unambiguously" invoke the right to remain silent in order to "cut off questioning." *Berghuis v. Thompkins*, 560 U.S. 370, 382, 386

(2010). The unequivocal invocation standard is an objective test. *Id.* at 381. If a defendant's statement is susceptible to "reasonable competing inferences" as to its meaning, then the "suspect did not sufficiently invoke the right to remain silent." *Markwardt*, 306 Wis. 2d 420, ¶36.

¶16 "Once a suspect has invoked the right to remain silent 'all police questioning must cease—unless the suspect later validly waives that right and initiates further communication with the police.'" *State v. Cummings*, 2014 WI 88, ¶52, 357 Wis. 2d 1, 850 N.W.2d 915 (citation omitted). "[T]he 'key question' is whether the [defendant] unequivocally invoked the right to cut off questioning during the [in-custody] interrogation." *Id.*

¶17 We conclude that Hampton unambiguously invoked his right to remain silent during the interrogation. Accordingly, the continued police interrogation violated Hampton's right against compelled self-incrimination, and a motion to suppress on that basis would have succeeded.

¶18 At the outset, the State contends in its supplemental letter brief that Hampton forfeited this argument by failing to raise it in the circuit court or in his initial briefs. However, as we noted in our order for supplemental briefs, Hampton asserted in his amended postconviction motion that "Hampton's request to return to his pod indicated he was not waiving his right to remain silent." The circuit court specifically addressed whether Hampton made a "true request" to return to his pod. And, one of the arguments Hampton makes in his initial appellate brief is that police failed to honor Hampton's requests to leave the interrogation room and go back to his pod. We explained that we ordered supplemental briefs because it was unclear whether Hampton was asserting that he unambiguously invoked his right to remain silent and the parties had not adequately briefed that issue.

¶19 In any event, "[r]ules of forfeiture and waiver are rules of judicial administration, and thus, a reviewing court may disregard a waiver or forfeiture and address the merits of an unpreserved issue in an appropriate case." *State ex rel. Universal Processing Servs. of Wis., LLC v. Circuit Ct. of Milwaukee Cnty.*, 2017 WI 26, ¶53, 374 Wis. 2d 26, 892 N.W.2d 267. Here, we decline to apply forfeiture. Instead, we allowed the State to address the issue in a supplemental brief, thereby eliminating any potential unfairness or prejudice to the State in considering this issue.

¶20 We now turn to the merits of Hampton's claim that he invoked his right to remain silent during his in-custody interrogation. As stated, we conclude that Hampton unequivocally invoked his right to remain silent when, responding to police asking whether he wanted to answer more questions, he shook his head "no" and said, "I just want to go back to my pod." We first summarize Hampton's arguments supporting this conclusion and then explain why we reject the State's arguments to the contrary.

¶21 Hampton argues that his statement is distinguishable from the statement that was found ambiguous in *Cummings*. There, our supreme court held that Cummings' statement, "Well, then, take me to my cell. Why waste your time? Ya know?" was not an unequivocal invocation of the right to remain silent. *Cummings*, 357 Wis. 2d 1, ¶53. The court explained that this statement, which was made "while verbally sparring with police," was ambiguous because it could have been interpreted as "a rhetorical device intended to elicit additional information from the officers about the statements of his co-conspirators." *Id.*, ¶¶54, 57. Hampton argues that here, in contrast to *Cummings*, Hampton was already under arrest and formally booked into jail. He contends that his statement that he wanted to go back to his pod was an unequivocal invocation of his right to end the

questioning and could not be interpreted, as in *Cummings*, as a dare to police to proceed on the charges. *See id.*, ¶54.

¶22 Hampton also cites cases from other jurisdictions holding that indicating "no," by words or actions, in response to police asking if the defendant wanted to talk was sufficient to invoke the right to remain silent. *See Garcia v. Long*, 808 F.3d 771, 773 (9th Cir. 2015) (response of "a simple 'no'" when police asked, after giving *Miranda* warnings, "do you wish to talk to me?" was sufficient to invoke right to remain silent); *Commonwealth v. Clarke*, 960 N.E.2d 306, 310, 315 (Mass. 2012) ("the defendant's conduct—an explicit headshake in response to a direct question [of "So you don't want to speak?"]—[was] sufficiently communicative so as to invoke his right to remain silent"). Hampton further argues that, after he invoked his right to end the questioning, all police questioning should have ceased, and that his later responses to police questioning cannot be used to cast doubt on the clarity of his request. *See Smith v. Illinois*, 469 U.S. 91, 92 (1984) ("an accused's postrequest responses to further interrogation may not be used to cast doubt on the clarity of [the accused's] initial request").

¶23 The State argues that Hampton's statement "I just want to go back to my pod," along with shaking his head "no" in response to police asking, "You don't want to do that?" was not an unequivocal invocation of his right to remain silent.[3] In support, the State contends that Hampton's statement is distinguishable from

---

[3] The State also argues that Hampton's initial question of "[C]an I go back to my pod now?" did not unequivocally invoke his right to remain silent. We need not reach that issue because we conclude that Hampton's subsequent answer to police asking whether he wanted to continue the questioning by shaking his head "no" and stating "I just want to go back to my pod" was sufficient to invoke his right to remain silent and to cut off police questioning from that point on. Therefore, we do not address the State's arguments based on Hampton's initial question as to whether he could go back to his pod.

*State v. Goetsch*, 186 Wis. 2d 1, 7-9, 519 N.W.2d 634 (1994), and similar to *Cummings*, 357 Wis. 2d 1.

¶24　The State argues that, unlike in *Goetsch*, Hampton did not "clearly indicate" that he did not wish to speak with police.  *See Goetsch*, 186 Wis. 2d at 7-9 (concluding that Goetsch's statement—"I don't want to talk about this anymore. I've told you, I've told you everything I can tell you.  You just ask me any questions and I just want to get out of here.  Throw me in jail, I don't want to think about this" —was an unequivocal invocation of the right to remain silent).  However, as in *Goetsch*, Hampton unequivocally said that he wanted to end the questioning.  Just as Goetsch said he did not want to talk and "I just want to get out of here," so Hampton shook his head no when asked if he wished to answer additional questions, and said, "I just want to go back to my pod."  That Hampton did not elaborate to the extent that Goetsch did does not render his statement less unequivocal.

¶25　The State argues that, as in *Cummings*, Hampton was not "disengaged" from the interrogation, but rather indicated a desire to continue the conversation by asking when the officers would come back to speak to him again and that he "had been going back and forth with the officers for some time, asking and answering questions and asking for the officers' advice."  However, *Cummings* does not hold that a defendant's request to end police questioning is necessarily ambiguous when the defendant has been, and remains, "engaged" with the interrogation.  Rather, *Cummings* held that the statement made in the context of "verbal sparring" with police, "Well, then, take me to my cell.  Why waste your time?  Ya know?" was ambiguous as to whether Cummings wanted to end the questioning or was "a rhetorical device intended to elicit additional information from the officers."  *Cummings*, 357 Wis. 2d 1, ¶53-54.  The State does not develop an argument based on citations to the record that, here, Hampton was "verbally

sparring" with police or that his statement could have been interpreted as a "rhetorical device" to try to elicit more information from them.

¶26 The State also argues that, as in *Cummings*, Hampton's statement could have reasonably been interpreted as limited to a refusal to answer specific questions about the location of events on a map. *See Cummings*, 357 Wis. 2d 1, ¶67 (explaining that "selective 'refusals to answer specific questions'" do not invoke the right to remain silent). The State points to the detective's question, "You don't want to do that?" as asking Hampton only if he wanted to answer any questions based on the map, rather than whether he wanted to continue the questioning at all. However, the videotape recording of the interrogation shows that, in context, the only reasonable interpretation of the detective's question is that he was asking whether Hampton wanted to continue the interrogation. Leading up to the detective's question, Hampton asked if he could return to his pod and the detective answered that he could but that the detective had more questions for Hampton. In response, Hampton asked what additional questions the detective had. The detective answered Hampton's question as to what further questions the police had for him by explaining that they had questions based on the map "and stuff like that." It was then that Hampton shook his head "no," prompting the detective to ask, "You don't want to do that?" The only reasonable interpretation of that exchange is that the detective was asking Hampton if he wanted to answer any more questions at all (which the detective had clarified would be about the map "and stuff like that").

¶27 The *Cummings* court explained that the "critical differences" between *Goetsch* (in which the statement referencing jail was a sufficient invocation of the right to remain silent) and *Cummings* (in which the statement referencing jail was insufficient) were that: (1) "the suspect in *Goetsch*, in addition to referencing jail, clearly stated that he did not wish to speak with police" while "Cummings did not

12

make any such additional statements"; (2) "the suspect in *Goetsch* expressed that he was exhausted, and he had disengaged from the conversation. Cummings, on the other hand, made his statement while verbally sparring with police"; and (3) "the suspect in *Goetsch* had nothing to gain from being thrown in jail except the end of the interview" and thus his statement was "not susceptible to any 'reasonable competing inferences' as to its meaning." *Cummings*, 357 Wis. 2d 1, ¶57 (quoting *Markwardt*, 306 Wis. 2d 420, ¶36).

¶28 As in *Goetsch*, Hampton indicated that he did not wish to continue speaking to police (as set forth above, he shook his head "no" when asked if he wanted to answer more questions) in addition to stating that he wanted to return to his pod. Hampton also was not engaged in "verbal sparring" with police in a way that could be interpreted as a rhetorical device intended to elicit information (indeed, as explained, the State does not even meaningfully develop that argument). And, Hampton was already booked into jail, and thus "had nothing to gain from being thrown in jail except the end of the interview." *Cummings*, 357 Wis. 2d 1, ¶57. In sum, the State fails to show that Hampton's statement was less like the statement in *Goetsch* and more like the statement in *Cummings*.

¶29 The State also argues that Hampton's statement was ambiguous because after Hampton invoked his right to remain silent, and after the police continued to tell him that they needed to hear what he was thinking when he shot the victim, Hampton asked when they would come back to talk to him. However, the State cites no legal authority supporting its reliance on what occurred after Hampton invoked his right to remain silent. As set forth above, after Hampton stated that he did not want to answer any more questions, the officers continued to attempt to elicit information from him. Hampton's subsequent question about when

13

the officers would return to speak with him did not render his prior invocation of his right to remain silent ambiguous. *See Smith*, 469 U.S. at 92.[4]

¶30    When, as here, a defendant "simpl[y]" indicates that the defendant does not want to talk with the police, the defendant has "invoked [the] 'right to cut off questioning.'" *Berghuis*, 560 U.S. at 382 (citation omitted). "[A] suspect need not 'speak with the discrimination of an Oxford don.'" *Davis v. United States*, 512 U.S. 452, 459 (1994) (citation omitted). Rather, the defendant need only articulate the desire to remain silent "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request." *See id.* (addressing the defendant's invocation of the right to counsel). We conclude that Hampton did so here, and thus a suppression motion on this basis would have been successful. Therefore, we reverse and remand for an evidentiary hearing on whether Hampton would not have pled guilty, but would have exercised his right to trial, had his statements to police been suppressed.

        *By the Court.*—Judgment and order reversed and cause remanded with directions.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).

---

[4] Notably, the State does not argue in its supplemental letter brief that, as the circuit court reasoned, Hampton did not make a "true request" to end the interview because he did not make a physical attempt to leave the jail interview room. We discern no basis for an argument that, to invoke the right to remain silent, a defendant who is in custody in jail is required to make a physical attempt to leave an interview room while officers are positioned between the defendant and the door. It would appear that the only way an inmate could leave an interview room and return to the inmate's jail cell would be as Hampton attempted here, that is, by requesting that the officers give permission and transport the inmate.