COURT OF APPEALS
DECISION
DATED AND FILED

**January 6, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP240-CR**

Cir. Ct. No.  **2015CF4698**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LARRY L. JACKSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed.*

Before White, C.J., Colón, P.J., and Donald, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Larry L. Jackson appeals a judgment of conviction and an order denying postconviction relief.  A jury found him guilty of two felonies: first-degree intentional homicide by use of a dangerous weapon as a party to a crime; and possessing a firearm while a felon.  He alleges that his trial counsel was ineffective for failing to investigate two of his three potential alibi witnesses and for failing to call those witnesses to testify at trial.  Because the record shows that trial counsel made reasonable strategic decisions, we reject Jackson's arguments and affirm.

## BACKGROUND

¶2     On March 11, 2015, at approximately 8:10 p.m., Richard King was shot and killed in front of a Milwaukee duplex on North 60th Street.  The State charged Jackson with first-degree intentional homicide as a party to a crime and with possessing a firearm while a felon.  The matters proceeded to trial.  A jury found Jackson guilty as charged, and he pursued an appeal that reached our supreme court.  *State v. Jackson* (*Jackson I*), 2023 WI 3, 405 Wis. 2d 458, 983 N.W.2d 608.

¶3     Facts developed at Jackson's trial were set forth in *Jackson I*:

> King and his wife, C.W., lived in the duplex along with their upstairs neighbors Gerald Tucker and his wife, Tiffany.  The two couples did not get along, and on the day of the homicide, King was upset with Gerald over some broken glass he found near his car.  King and his friend Andre Dorsey confronted Gerald and Tiffany with a gun.  The tension was momentarily defused, however, when the Tuckers' kids came outside.  According to Gerald, after getting inside, Tiffany called their friend Jackson and asked him to come over.  Later on, King confronted Gerald again after he stepped outside to smoke a cigarette.  Dorsey, who was now standing off to the side, saw a man with a medium complexion who he later identified as Jackson walk up to Gerald.  The two whispered to each other and then entered the front of the duplex.  Moments later, Dorsey heard gunshots and saw King fall to the ground.  He then saw a

2

hand with a light complexion pointing a gun through a crack in the doorway fire two shots in his direction. After the shooting stopped, C.W. saw a young African American man with a dark complexion run past her ground floor window. She was never able to positively identify him.

Gerald was arrested as a suspect in the homicide. While he was in custody, he told police that he did not know who shot King. Months later, he identified Jackson as the shooter after learning that police had recovered the murder weapon. That weapon, a .40 caliber Smith and Wesson pistol, belonged to Jackson's friend, Joe Brown, and was matched by ballistics experts to a bullet and several casings found at the scene. At trial, Brown testified that he loaned the gun to Jackson on the day of the shooting. Jackson returned thirty to forty-five minutes later with rubber gloves and the gun, which had some bullets missing. The two men boiled the gloves to destroy any evidence. After changing his clothes, Jackson left. The two men met up the next day and Jackson allegedly confessed to being involved in a shooting, although he did not mention King or the Tuckers by name. Brown's friend, Anthony Boone, testified that he had once seen Jackson at Brown's house standing outside of the bathroom with what appeared to be a bag of clothes, but gave conflicting accounts as to when that occurred.

Jackson's defense at trial focused on his alleged alibi: that he was at his mother's house on the evening of the homicide. The only defense witness was Jackson's mother, Carol. She testified that she remembered the night well, and that she knew Jackson stayed at her house all night because her alarm system would have gone off if any of the doors to the house were opened.

*Id.*, ¶¶3-5. The jury rejected Jackson's alibi defense.

¶4 Jackson moved for postconviction relief. He alleged, as relevant here, that his trial counsel was ineffective for presenting only Carol Jackson to support his alibi; and for failing to interview and present at trial the two additional alibi witnesses disclosed on his notice of alibi, namely, his sister Crystal Jackson, and his former girlfriend JaNikka Marsh.[1] Both Crystal and JaNikka submitted affidavits

---

[1] Throughout the remainder of this opinion, we refer to each of the three women that Jackson named as an alibi witness by her first name.

3

in support of the postconviction motion. Each woman's affidavit stated that the affiant was with Jackson at Carol's home at the time of the homicide, was not interviewed by trial counsel, and would have testified at trial if asked to do so. The circuit court denied the postconviction motion without a hearing. Jackson appealed, and our supreme court reversed and remanded, concluding that a *Machner* hearing was required.[2] *Jackson I*, 405 Wis. 2d 458, ¶1.

¶5    At the *Machner* hearing, trial counsel said that she had represented defendants in hundreds of trials during approximately 35 years as a criminal defense attorney. She testified that, in her assessment, presenting one good alibi witness at trial was strategically a better tactical choice than presenting multiple alibi witnesses because, in her experience, the State was often able to discredit defense witnesses by highlighting the ways in which the testimony of one witness differed from another's. She explained: "I have sat through so many cross-examinations by [prosecutors] who have managed to find minute, miniscule, numerous major discrepancies between one witness and another. And these people are not professional witnesses, can easily be confused, crossed up, contradicted, impeached." Counsel added that both she and Jackson viewed the prosecutor in this case as particularly skillful at cross-examination. Counsel said that her strategy was therefore to call only one alibi witness.

¶6    Trial counsel also testified that she and Jackson "together decided" that Carol would be the best choice as his alibi witness. In this regard, trial counsel

---

[2] *See* **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). As our supreme court explained when ordering the remand, "a *Machner* hearing is 'the evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain his or her handling of the case.'" **State v. Jackson** (**Jackson I**), 2023 WI 3, ¶1 n.1, 405 Wis. 2d 458, 983 N.W.2d 608 (citation modified).

testified that she routinely reviews the circuit court's online docket—CCAP—to determine whether potential witnesses have criminal histories that might undermine credibility.[3] Trial counsel further testified that, although she did not have a specific recollection of reviewing CCAP to assess the potential alibi witnesses' criminal histories in this case, she was "confident" that she would have done so. The State established that at the time of Jackson's trial, JaNikka and Crystal were both felons, that JaNikka had a total of six convictions, and that Crystal had four. Trial counsel testified that criminal convictions would have affected the witnesses' credibility in the eyes of the jury, thus impacting the strength of the alibi testimony. Trial counsel also confirmed that the only blot on Carol's record involved operating a vehicle with a revoked license, and trial counsel testified that such convictions "don't usually count in a Milwaukee County courtroom for impeachment."[4]

¶7     Trial counsel testified that she also took into account that Jackson "was not consistently clear about" the testimony that JaNikka and Crystal would offer on the stand, and he described ways in which each woman's anticipated testimony would be inconsistent with the other's. Moreover, while Carol was at the courthouse at the start of the trial, neither JaNikka nor Crystal displayed a

---

[3] CCAP is an acronym for Wisconsin's Consolidated Court Automation Programs. *State v. Kenyon*, 2025 WI App 60, ¶9 n.3, ___ Wis. 2d ___, ___ N.W.3d ___. The programs serve a variety of purposes, including providing a publicly available website of Wisconsin state court records. *Id.* CCAP thus normally permits ready public access to a witness's Wisconsin criminal charges and convictions. *State v. Wayerski*, 2019 WI 11, ¶29, 385 Wis. 2d 344, 922 N.W.2d 468.

[4] A witness normally may be asked about the number of times that he or she has been convicted of a crime. *See* WIS. STAT. § 906.09(1) (2023-24). Evidence of a criminal conviction may be excluded in the circuit court's discretion, however, if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice. *State v. Gary M.B.*, 2004 WI 33, ¶19, 270 Wis. 2d 62, 676 N.W.2d 475. The record shows that Carol was not asked about criminal convictions when she testified at Jackson's trial.

All references to the Wisconsin Statutes are to the 2023-24 version.

willingness to testify, and Jackson did not provide trial counsel with contact information for either one.

¶8    Jackson testified differently. He said that he provided trial counsel with contact information for his three potential alibi witnesses, but trial counsel did "nothing" with that information. Jackson further testified that he expected his trial counsel to call all three of his alibi witnesses to the stand. He said that he and trial counsel never discussed calling only one alibi witness, nor did they agree to call only Carol. He testified that his trial counsel alone made those decisions.

¶9    JaNikka and Crystal also testified at the post-remand hearing, and each described the testimony that she would have provided at trial. JaNikka testified that she was taking a nap at Carol's house at the time of the shooting. She said that Jackson got into bed with her before she fell asleep, and he woke her up at "roughly around between 10 and 10:30." As for Crystal, she testified that she was at Carol's house on the night of the shooting. She said that she saw Jackson and JaNikka go into Jackson's first-floor bedroom early in the evening and never saw Jackson leave. Crystal further testified that she spent parts of the evening on the upper floor of the home and outside on the front porch, and she acknowledged that she did not know what Jackson was doing during those times. She additionally acknowledged that Jackson knew the deactivation code for the home's alarm system, so he could have left through a back door without her knowledge.

¶10    At the conclusion of the hearing, the circuit court made numerous factual findings, including findings that trial counsel was credible and that Jackson, JaNikka, and Crystal were not credible. Based on trial counsel's credible testimony, the circuit court found that "the decision to call Carol as the sole alibi witness was a strategic decision that [trial counsel] made and [that] was agreed to by" Jackson,

6

and that the decision was "based upon [trial counsel's] years of experience." The circuit court concluded that trial counsel did not perform deficiently in pursuing the selected trial strategy and that, regardless, Jackson was not prejudiced by trial counsel's performance in light of the strength of the evidence against him at trial and the inability of both JaNikka and Crystal to "state that [Jackson] was not at the homicide scene." Jackson appeals.

## DISCUSSION

¶11 Claims of ineffective assistance of counsel are analyzed using a two-prong test that requires the defendant to prove both that counsel's performance was deficient and that the deficiency prejudiced the defense. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). To prove deficient performance, the defendant must demonstrate that counsel made serious mistakes that cannot be justified as the exercise of objectively reasonable professional judgment. *See **id.*** at 688-89. To prove prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** at 694. A court may consider either prong of the ***Strickland*** analysis first, and if the defendant's showing on one prong is insufficient, a reviewing court need not consider the other. ***Id.*** at 697.

¶12 The issues of deficient performance and prejudice present mixed questions of fact and law. ***State v. Johnson***, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). "[W]e will not reverse the circuit court's findings of fact, that is, the underlying findings of what happened, unless they are clearly erroneous" but "whether counsel's behavior was deficient and whether it was prejudicial to the defendant are questions of law," which we review independently. ***State v. Pitsch***, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985).

We begin here by considering the deficiency prong of *Strickland*:

> Counsel performs deficiently if his [or her] "conduct falls outside an objectively reasonable range," which we recognize is "wide." We apply a "strong presumption" that counsel acts "reasonably within professional norms." We are "highly deferential" to counsel's decisions, provided they are objectively reasonable and strategic. However, we do not review the reasonableness of trial counsel's decisions with "the benefit of hindsight." We will not "second-guess a reasonable trial strategy, unless it was based on an irrational trial tactic or based upon caprice rather than upon judgment." We cannot decide after-the-fact that "a more appropriate decision could have been made."

*State v. Mull*, 2023 WI 26, ¶35, 406 Wis. 2d 491, 987 N.W.2d 707 (internal citations and brackets omitted). We assess allegations of deficiency keeping in mind that "[t]here are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689. Indeed, "[r]are are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Mull*, 406 Wis. 2d 491, ¶58 (citation omitted).

¶13 The circuit court found that trial counsel made a strategic decision to call only one alibi witness and that she made her decision in consultation with Jackson. Those findings are supported by trial counsel's testimony, which the circuit court found credible. The findings are thus not clearly erroneous, and accordingly, we accept them.

¶14 We independently conclude that trial counsel's strategy was objectively reasonable. *See State v. Kimbrough*, 2001 WI App 138, ¶31, 246 Wis. 2d 648, 630 N.W.2d 752. The strategy was based on counsel's knowledge of normal cross-examination practices and the risks they pose to the credibility of lay witnesses; counsel's understanding of the vulnerabilities that an experienced prosecutor can expose when cross-examining multiple witnesses about the same

event; and counsel's familiarity with the skill and ability of the prosecutor handling this case. Further, the strategy took into account the information that trial counsel received from Jackson regarding his understanding of the witnesses' differing recollections and potential inconsistencies on the stand. Because trial counsel's actions constituted an objectively reasonable strategic choice, rationally based on both counsel's experience and her discussions with Jackson, counsel's performance was not deficient. *See State v. Breitzman*, 2017 WI 100, ¶64, 378 Wis. 2d 431, 904 N.W.2d 93.

¶15 Jackson next asserts that his trial counsel performed deficiently regardless of whether she pursued a reasonable strategy in presenting only one alibi witness because counsel selected Carol as the sole alibi witness without contacting JaNikka or Crystal. Jackson argues that his trial counsel therefore conducted an inadequate investigation, and her strategic choice was necessarily uninformed. We reject this argument. Trial counsel's duty is "to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary." *State v. Carter*, 2010 WI 40, ¶34, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted).

¶16 Here, trial counsel testified that her investigative steps routinely include a review of any potential witness's criminal history as reflected on CCAP, and she was certain that she took that step in Jackson's case. The record shows that at the time of trial, CCAP reflected a nominal criminal history for Carol, consisting only of operating a vehicle after license revocation, which trial counsel explained is a type of offense that is typically inadmissible for impeachment purposes in Milwaukee County. JaNikka and Crystal, by contrast, were both felons, and each woman had multiple criminal convictions that could adversely affect her credibility. *See* WIS. STAT. § 906.09.

9

¶17 Additionally, trial counsel explained that she viewed JaNikka and Crystal as problematic alibi witnesses because Jackson was "not consistently clear as to what he believed each witness would testify to." We observe that an alibi witness's anticipated testimony—a description of the defendant's location and activities at a specific time—would normally be known to the defendant whose whereabouts and actions the witness will describe. *See State v. Horenberger*, 119 Wis. 2d 237, 242-43, 349 N.W.2d 692 (1984) (explaining the nature of an alibi defense). Jackson's inability to give a clear description of the expected testimony of a proposed alibi witness provides a reasonable basis to view that witness as less desirable than a witness whose alibi testimony Jackson could predict.

¶18 Finally, on the day of trial neither JaNikka nor Crystal appeared willing to testify. Jackson's recorded telephone calls from the jail show that Jackson asked JaNikka to be a witness, and he offered to provide and pay for her transportation to the courthouse if she would testify. Nonetheless, she did not come to court. As to Crystal, she testified at the postconviction hearing that she would have willingly been a trial witness, but she also acknowledged that at the time of trial she "w[as]n't talking to" Jackson. She further testified that she did not have a fixed address or a phone at that time, and her family would not have known how to reach her because, she explained, she "was on bad terms" with Carol. Again, we independently conclude that trial counsel reasonably determined that Carol, who came to the courthouse for trial and was supportive of Jackson, was a better choice as the alibi witness than either of the reluctant and unfriendly alternatives.

¶19 In sum, trial counsel implemented a reasonable trial strategy when she decided to call one alibi witness and chose Carol as that witness. Accordingly, trial counsel did not perform deficiently. *See Breitzman*, 378 Wis. 2d 431, ¶64.

¶20     Jackson and the State both discuss whether trial counsel's performance prejudiced Jackson's defense and, relatedly, whether the circuit court properly assessed the prejudice prong of the *Strickland* analysis.  However, we need not consider the prejudice prong when the defendant fails to satisfy the deficient performance prong.  *Mull*, 406 Wis. 2d 491, ¶53.  We decline to do so here.[5] "[C]ases should be decided on the narrowest possible ground[.]"  *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).  For all the foregoing reasons, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[5] We have reviewed the circuit court's conclusion that Jackson failed to prove prejudice from trial counsel's actions in part because the State presented an "overwhelming case" against him at trial.  We note that our supreme court evaluated the trial evidence in *Jackson I*, and concluded that "[i]n fact, the State's case was not so overwhelming."  *Id.*, 405 Wis. 2d 458, ¶19. As discussed above, we need not consider the circuit court's contrary assessment in light of our conclusion that trial counsel's performance was not deficient.